**GARMAN TURNER GORDON LLP**
ERIC R. OLSEN
Nevada Bar No. 3127
ERIKA PIKE TURNER
Nevada Bar No. 6454
STEVEN E. KISH III
Nevada Bar No. 15257
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000
Fax: (725) 777-3112
Email: eolsen@gtg.legal
        eturner@gtg.legal
        skish@gtg.legal
*Attorneys for Defendant*
*Ignite International, Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAN BRANDON BILZERIAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>IGNITE INTERNATIONAL BRANDS, LTD., a foreign corporation; IGNITE INTERNATIONAL, LTD., a foreign corporation; PAUL BILZERIAN, an individual; SCOTT ROHLEDER, an individual; RUPY DHADWAR, an individual,<br><br>Defendants. | Case No. 2:24-cv-2101-RFB-NJK<br><br>**IGNITE INTERNATIONAL, LTD.'S MOTION TO DISMISS** |

Defendant Ignite International, Ltd. ("Ignite US"), through its counsel, Garman Turner Gordon, hereby moves to dismiss Plaintiff Dan Brandon Bilzerian's ("Plaintiff") claims against it. This Motion is made pursuant to Federal Rule of Civil Procedure 12(b), subsections (2), (3), and (6), and supported by the following Memorandum of Points and Authorities, the Declaration of Scott Rohleder ("Rohleder Decl.") and supporting exhibits attached hereto, the papers and pleadings on file herein, matters subject to judicial notice, and any argument the Court permits.

. . .

. . .

. . .

…

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

This Court does not have personal jurisdiction over Ignite US. The Court's exercise of jurisdiction over Ignite US would fail to comport with federal due process, because Ignite US, a nonresident, lacks sufficient minimum contacts with Nevada for the Court to exercise jurisdiction over it without offending traditional notions of fair play and substantial justice.

Moreover, even if personal jurisdiction could somehow be exercised over Ignite US, Nevada does not provide the proper venue for Plaintiff's claims. The Nevada District is not only the improper venue, but it is also an inconvenient one such that dismissal is warranted under the doctrine of *forum non conveiens*. Plaintiff expressly references proceedings now pending in Canada (the "Canadian Proceedings"), but he omits from his Complaint the fact that ***he*** initiated the Canadian Proceedings against Ignite International Brands, Ltd. ("Ignite International") and several of the other individual defendants.[1] Plaintiff's claims in the Canadian Proceedings arise from the same transactions and occurrences as the instant action. On these facts, the Court should dismiss Plaintiff's complaint in favor of resolution in Canada.

Finally, if the Court allows Plaintiff's complaint to proceed in this district – which it should not – it must dismiss the causes of action against US Ignite under Rule 12(b)(6), because they fail to allege claims upon which relief can be granted.  The claims averred are impermissibly vague and fatally defective. Among other things, Plaintiff's use of group-pleading makes it impossible to determine what, if any, conduct is attributed to Ignite US, and he also fails to aver any specific property allegedly protected by the Lanham Act or by copyright. Therefore, the Court can and should dismiss Plaintiff's complaint, pursuant to Rule 12(b)(6) if it reaches the issue.

. . .

. . .

---

[1] (*See, e.g.*, Petition to the Supreme Court of British Columbia, Vancouver Registry Case No. S-244508, attached as **Exhibit 1**; Amended Petition to the Supreme Court of British Columbia, Vancouver Registry Case No. S-244508, attached as **Exhibit 2**; Petition to the Supreme Court of British Columbia, Vancouver Registry Case No. S-245663, attached as **Exhibit 3**; Amended Petition to the Supreme Court of British Columbia, Vancouver Registry Case No. S-245663, attached as **Exhibit 4**).

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

## II.

## BACKGROUND

**A.  The Parties are Embroiled in a Legal Dispute in Canada Arising from the Same Issues Raised in the Instant Action.**

In July of this year, Plaintiff, purporting to act on behalf of Ignite International, brought in a Canadian court claims against International Investments, Ltd., Gregory Gilpin-Payne, Scott Rohleder, Robin Rodriguez, Thomas Bunker, and Ralph Gilpin-Payne.[2] Those claims, like the instant action, arise from Plaintiff's termination as Ignite International's CEO and his removal from its Board of Directors.[3] Plaintiff brought a second proceeding in Canada based on the same claims just months later,[4] after the Canadian Court found that Plaintiff "purported to have initiated proceedings on behalf of the company, when he had no right or authority to do so."[5] As the Honorable Justice Tammen of the Supreme Court of British Columbia described:

> The litigation to date has a tortured history, which I will not even attempt to summarize, much less describe in detail. At its core, this is a dispute over control of the company, Ignite, which primarily sells vaping and related products, largely by using the social media celebrity status of [Plaintiff] as its marketing platform.[6]

**B.  Despite the Pendency of the Canadian Proceedings, Plaintiff Filed the Instant Action in this Court.**

The Supreme Court of British Columbia has already grappled with the difficult task of "craft[ing] more surgical orders which will hopefully serve the broader interests of the company and permit it to conduct its corporate business in an orderly fashion"[7] while adjudicating the remaining claims between the parties. Those efforts have been made appreciably more difficult for the Canadian Court because, "[u]nfortunately, in his efforts to regain his positions with Ignite and, by extension, control of the company, [Plaintiff] and his original lawyers, *not* counsel who

---

[2] (*See* Ex. 1).

[3] (*See generally* Ex. 2).

[4] (*See generally* Exs. 3 & 4).

[5] (*See* Oral Reasons for Judgment in *Bilzerian v. Ignite International Brands, Ltd., et al.*, Vancouver Registry No. S-245663, attached as **Exhibit 5**, at ¶ 11).

[6] (*See* Ex. 5 at ¶ 3).

[7] (*See* Ex. 5 at ¶ 7).

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

appeared before [Justice Tammen], have made a series of serious missteps which have led to [Plaintiff] either wittingly or unwittingly abusing the process of [the Canadian] court."[8]

Plaintiff, unhappy with the results of the Canadian Proceedings, brought this action. Notably, Plaintiff's allegations in this case are inconsistent with sworn statements he made in the Canadian Proceedings.[9] Indeed, Plaintiff tacitly concedes that this action is brought to address the same claims and issues raised in the Canadian Proceedings, although he claims that Defendants "[a]ttempted to seize, through Canadian court proceedings, Dan's Instagram account"[10]—deftly eliding the fact that ***Plaintiff*** was the one to initiate the Canadian Proceedings.[11]

### C. The Complaint Does Not Allege Ignite US' Contacts with Nevada

The Complaint avers that Ignite US[12] is a Wyoming corporation domiciled in California and Texas.[13] It does not allege any contacts with Nevada. Instead, the Complaint broadly asserts only that "Defendants purposefully availed themselves for doing business in the United States and are subject jurisdiction in any U.S. court."[14]

### III.
### ARGUMENT

### A. Legal Standards for Dismissal Under Rule 12(b)(2), (3) and (6).

#### 1. Rule 12(b)(2): Dismissal for lack of personal jurisdiction.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "To avoid dismissal, the plaintiff bears the burden of demonstrating that its allegations establish a prima facie showing of personal jurisdiction." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)); *see also Tuazon v. R.J.*

---

[8] (Ex. 5 at ¶ 6).

[9] (*See* Dan Brandon Bilzerian's Second Affidavit in *Bilzerian v. Ignite International Brands, Ltd., et al.*, Vancouver Registry No. S-245663, dated October 17, 2024, attached as **Exhibit 6**).

[10] (Compl. at ¶ 25, subpoint 5).

[11] (*See* Exs. 1, 2, 3 & 4).

[12] The Complaint defines Ignite International, Ltd., the U.S. corporation, as "Ignite US." It defines Ignite International Brands, Ltd., the Canadian corporation, as "Ignite."

[13] (Compl. at ¶ 11).

[14] (Compl. at ¶ 5).

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

4 of 25

*Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) ("A plaintiff bears the burden of establishing personal jurisdiction.").

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Exped'ns*, 39 F.3d 1398, 1404 (9th Cir. 1994). As "Nevada's long-arm statute, NRS 14.065, reaches the limits of due process set by the United States Constitution," the two prongs of the personal jurisdiction analysis are coterminous with one another. *Baker v. Eighth Jud. Dist. Ct.*, 999 P.2d 1020, 1023 (Nev. 2000); *see also Walden v. Fiore*, 571 U.S. 277, 282–84 (2014). "Second, the exercise of jurisdiction must comport with federal due process." *Chan,* 39 F.3d at 1404–05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Chan*, 39 F.3d at 1404–05 (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S., at 317). Alternatively, "[i]n order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (quoting *Walden*, 571 U.S. 277 at)).

### 2.    Rule 12(b)(3): Dismissal for improper venue and/or *forum non conveniens.*

Federal law prescribes the venue for civil actions. *See* 28 U.S.C. § 1391(b). Under § 1391(b), venue is proper only in one of three places:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

If an action is commenced in the improper venue, the district court can either (A) dismiss it or (B) transfer it to another district where it might have been brought. *See* 28 U.S.C. § 1406(a). Where venue is proper, the court can nonetheless transfer the case to another appropriate venue "in the interest of justice." *Id.* § 1404(a). When determining whether venue is proper, the district court views disputed facts, draws all reasonable inferences, and resolves factual disputes in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1138 (9th Cir. 2004). The district court is not, however, limited to the "four corners" of the pleadings—it can consider the existence of other facts. *See, e.g.*, *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996) (analyzing a motion to dismiss for improper venue involving a forum selection clause).

The dismiss-or-transfer decision is left to the court's discretion after "an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The Ninth Circuit has provided factors that district courts may consider when deciding whether to transfer a case "in the interest of justice," which include the following:

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498–99.

However, transfer is limited to federal district courts; a court in the U.S. cannot transfer an action to a court in a foreign country. *See* 28 U.S.C. § 1404. Thus, under the doctrine of *forum non conveniens*, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citation omitted); *see also Cheng v. Boeing Co.*, 708 F.2d 1406, 1409 (9th Cir. 1983). Before dismissing an action on this ground, a court analyzes two factors: "(1) whether an adequate alternative forum exists, and (2) whether the balance of private

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

6 of 25

and public interest factors favors dismissal." *Lueck*, 236 F.3d at 1142.

### 3. Rule 12(b)(6): Dismissal for failure to state a claim.

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Rule 8(a) "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a claim is insufficient and should be dismissed if it "lack[s] [ ] a cognizable legal theory" or there is an "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It is inappropriate to assume that the claimant "can prove facts which it has not alleged or that the defendants have violated the … laws in ways that have not been alleged." *Assoc'd Gen. Cont'rs of Cal., Inc. v. Cal. State Council of Carpt'rs*, 459 U.S. 519, 526 (1983).

When determining whether a complaint states a claim, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). Thus, a pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Further, a court can dismiss a case under Rule 12(b)(6) when the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); Fed. R. Evid. 201(d) ("[a] court shall take judicial notice if requested by a party and supplied with the necessary information."). An "adjudicative fact" may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

7 of 25

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For instance, courts may take judicial notice of public documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

**B.  The Court Does Not Have Personal Jurisdiction Over Ignite US.**

**1.  Ignite US is not subject to general personal jurisdiction in Nevada.**

As noted above, Plaintiff does not even attempt to allege general personal jurisdiction over Ignite US.

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). As the Supreme Court has explained, "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Isolated trips to or transactions in a jurisdiction are likewise insufficient to establish the "continuous and systematic" presence in a jurisdiction required to assert general personal jurisdiction over an entity. *See, e.g., id.* at 416. The Court's reasoning in *Helicopteros Nacionales* is instructive:

> The one trip to Houston by Helicol's chief executive officer for the purpose of negotiating the transportation-services contract with Consorcio/WSH cannot be described or regarded as a contact of a "continuous and systematic" nature … and thus cannot support an assertion of in personam jurisdiction over Helicol by a Texas court. Similarly, Helicol's acceptance from Consorcio/WSH of checks drawn on a Texas bank is of negligible significance for purposes of determining whether Helicol had sufficient contacts in Texas.

*Id.*

There are simply no facts alleged in this case to suggest that Ignite US is essentially "at home" in Nevada by virtue of "continuous and systematic" presence in and contacts with the state. To be sure, there are none. As Plaintiff alleges, Ignite US is a Wyoming company domiciled in California and Texas.

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

8 of 25

Ignite US simply does not have a continuous or systematic presence in Nevada that would subject it to general personal jurisdiction.[15] After all, it does not manufacture its products in Nevada, have any officers or employees working on its behalf from Nevada, maintain any business records in Nevada, have a bank account in Nevada, hold annual or special meetings of its stockholders or directors in Nevada, or own any real property or have any leasehold interest in real property located in Nevada.[16]

### 2. Ignite US is not subject to specific personal jurisdiction in Nevada.

Plaintiff must demonstrate that Ignite US's contacts with Nevada are sufficient to establish specific personal jurisdiction in the state "under a three-prong test":

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

"[Plaintiff] bears the burden of satisfying the first two prongs. If [Plaintiff] does so, the burden then shifts to [Ignite US] to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990), then quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78 (1985)). "[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

The first prong is determined by reference to "[t]he 'effects' test," which "requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Mavrix Photo*, 647 F.3d at 1228 (quoting *Calder v. Jones*, 465 U.S. 783 (1984)). The *Calder* effects test is appropriate in tort and "tort-like" cases—which, as the Ninth Circuit has held, includes copyright

---

[15] (Rohleder Decl. at ¶ 6(c)).
[16] (Rohleder Decl. at ¶¶ 6(a)–(g)).

GARMAN TURNER GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

infringement claims. *See id.* ("Because Mavrix has alleged copyright infringement, a tort-like cause of action, purposeful direction 'is the proper analytical framework.'").

Further, the Ninth Circuit has "discussed with approval a sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect." *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997)). Where a defendant has posted a website but "had done nothing to encourage residents of the forum state to access its site," the Ninth Circuit has found no personal jurisdiction exists. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (discussing *Cybersell*). "Under the effects doctrine, 'something more' was required to indicate that the defendant purposefully directed its activity in a substantial way to the forum state." *Id.* This analysis of a website comports with existing Supreme Court precedent on personal jurisdiction, which explains that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Sup'r Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987).

Additionally, the use of a third-party website accessible in the forum is insufficient to establish personal jurisdiction. For instance, in *Boschetto*, the plaintiff "attache[d] special significance to the fact that the transaction was consummated via eBay, noting that the eBay listing could have been viewed by anyone in California (or any other state for that matter) with Internet access." *Boschetto*, 539 F.3d at 1017–18. The Ninth Circuit disagreed, noting that the plaintiff "[i]gnor[ed] the limited nature of the transaction at issue" and found, instead, that "the fact that eBay was used as the conduit for this sale does not affect the jurisdictional outcome." *Id.* at 1018.

Here, Plaintiff makes no allegations showing that Ignite US purposefully directed its activities toward Nevada. The only allegation that comes close, but does not mention Ignite US specifically, is that "the claim in this complaint relate to [Defendants'] maintenance and operation of many websites and social media accounts that are interactive and fully accessible to residents of this District."[17] The claim that the unspecified "website and social media accounts" maintained

---

[17] (Compl. at ¶ 5).

Garman Turner Gordon LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

or operated by one or more of the Defendants are "fully accessible" in Nevada is, without more, insufficient as a matter of law to render Ignite US subject to personal jurisdiction in this District. *Compare*, *Asahi*, *Calder*, *Mavrix*, *Boschetto*, *Rio Properties*, and *Cybersell*, *supra*.

As a threshold matter, the existence of any unspecified accounts on unspecified social media platforms is immaterial, as a matter of law. Like the transaction consummated via eBay in *Boschetto*, those accounts (whatever they may be) do not impute personal jurisdiction over Ignite US. Further, Plaintiff does not allege that Ignite US owns or operates any of those unspecified accounts.

Further, as to the unspecified "websites," Plaintiff does not (and cannot) allege any action by Ignite US or a single other defendant to "encourage" Nevada residents to access them.[18] There is no description of how or why these unspecified websites are supposedly "interactive," let alone how that purported interactivity rises to the level of expressly aiming an intentional act to the forum state, as required by the *Calder* effects test. *Compare Mavrix*, *supra*.

Because Plaintiff fails the first two prongs, this Court need not get to the third prong of the specific jurisdiction test, but it entails a seven-factor balancing test, under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm,* 503 F.3d 1050, 1060 (9th Cir. 2007)

In the Complaint, Plaintiff merely alleges that "Defendants purposefully availed themselves for doing business in the Unites States and are subject to jurisdiction in any U.S. court."[19] In so arguing, he attempts to invoke "Federal Rule of Civil Procedure 4(k)(2), known as the federal long-arm statute." *Best Odds Corp. v. iBus Media Ltd.*, No. 2:13-CV-02008-RCJ, 2014 WL 2527145, at *3 (D. Nev. June 4, 2014), *aff'd,* 655 F. App'x 582 (9th Cir. 2016). Plaintiff, however, wholly ignores the three requirements for Rule 4(k)(2) jurisdiction: "(1) plaintiff's cause

---

[18] (*See* Rohleder Decl. at ¶ 6(h)).
[19] (Compl. at ¶ 4).

GARMAN TURNER GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

of action arises under federal law; (2) the defendant **is not subject to personal jurisdiction in any state court of general jurisdiction**; and (3) the exercise of personal jurisdiction over the defendant would comport with due process." *Id.* (emphasis added) (citing *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1126 (9th Cir. 2002)).

Plaintiff alleges that Ignite US "is a Wyoming corporation domiciled in California and Texas,"[20] tacitly conceding that there are at least three other states in which Ignite US would likely be subject to personal jurisdiction: Wyoming, California, and/or Texas. Thus, the face of Plaintiff's own pleading bars him from arguing, and bars this Court from employing, Rule 4(k)(2) jurisdiction in this case. Without Rule 4(k)(2) jurisdiction, Plaintiff's claims must be dismissed.

In any event, the seven-factor test for evaluating whether assertion of personal jurisdiction over Ignite US comports with fair play and substantial justice weighs heavily in favor of dismissing this action. For the reasons set forth in detail above, Ignite US's "purposeful interjection" into Nevada is not supported. Therefore, the first of the factors clearly cuts against personal jurisdiction in this Court.

For the reasons set forth at length below, the second, third, fifth, sixth, and seventh factors weigh against exercising personal jurisdiction because this Court can and should defer to the Canadian Proceedings, where the parties are already adjudicating the claims at issue in this action. It conflicts with the sovereignty of the Canadian Proceedings (factor three), which has a vested interest in adjudicating the claims that ***Plaintiff brought*** in that forum (factors four and six).[21] Allowing Plaintiff to forum shop after electing to bring his claims in Canada would waste both public and private resources and subject the parties to the risk of inconsistent judgments (factor five).[22]

. . .

. . .

. . .

. . .

---

[20] (Compl. at ¶ 11).

[21] (*See* Rohleder Decl. at ¶¶ 7–9).

[22] (*See* Rohleder Decl. at ¶¶ 8(e), 8(f), 10).

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

### C. **Dismissal is Appropriate Because this District is an Improper or, at the Very Least, Inconvenient Forum.**

#### 1. The District of Nevada is an improper venue under 28 U.S.C. § 1391(b).

Federal law prescribes—and proscribes—where a plaintiff may file an action. *See* 28 U.S.C. § 1391. Courts can and should dismiss cases that are brought in the "wrong" or "improper" venue. As the Supreme Court as explained:

> This question—whether venue is "wrong" or "improper"—is generally governed by 28 U.S.C. § 1391. That provision states that "[e]xcept as otherwise provided by *law* ... this section *shall* govern the venue of *all civil actions* brought in district courts of the United States." § 1391(a)(1) (emphasis added). It further provides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b). When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).

*Atl. Marine Const. Co. v. U.S. Dist. Ct., W. Dist. of Tex.*, 571 U.S. 49, 55–56 (2013).

Here, § 1391(b)(1) is plainly inapplicable, as **none** of the Defendants are residents of Nevada. Section 1391(b)(3) is likewise inapplicable for the same reason that Plaintiff's attempt at Rule 4(k)(2) jurisdiction fails—there are other venues in which Ignite US is arguably subject to personal jurisdiction, including its state of incorporation (Wyoming) and  its averred domiciles (California and Texas). Thus, the only remaining basis for venue in this Court is § 1391(b)(2): "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Plaintiff's claims fail under this prong, too.

The claims here do not arise out of any property located in or actions taken in Nevada. Rather, Plaintiff's claims arise from his alleged termination as Ignite International's CEO, his removal from Ignite International's Board of Directors,[23] and Ignite International's alleged

---

[23] (*See* Compl. at ¶¶ 22–23).

1  operation of unspecified "websites" and social media accounts, including a single identified

2  "Instagram account called @ignite.intl."[24] None of that conduct is alleged to have occurred in

3  Nevada.

4      Accordingly, 28 U.S.C. § 1391 should be the beginning and the end of the inquiry. Venue

5  is improper in this Court. Plaintiff's claims should be dismissed.

6  **2.  This Court should dismiss this action in favor of the pending Canadian**

7  **Proceedings because the District of Nevada is an inconvenient forum.**

8      The Court should dismiss Plaintiff's claims under the doctrine of *forum non conveniens*,

9  because "litigation in a foreign forum would be more convenient for the parties." *Lueck*, 236 F.3d

10  at 1142 (citation omitted); *see also Cheng*, 708 F.2d at 1409. Both of the *forum non conveniens*

11  factors— "(1) whether an adequate alternative forum exists, and (2) whether the balance of private

12  and public interest factors favors dismissal"—are satisfied here. *Lueck*, 236 F.3d at 1142.

13      "The Supreme Court has held that an alternative forum ordinarily exists when the defendant

14  is amenable to service of process in the foreign country." *Lueck*, 236 F.3d at 1143. An alternative

15  forum is not inadequate simply because it does not have all the same procedural trappings as the

16  American judiciary; nor does a forum become inadequate simply because the law of the foreign

17  jurisdiction is less favorable to the plaintiff than the corresponding laws of the United States. *See,*

18  *e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 236 (1981); *Lockman Found. v. Evangelical All.*

19  *Mission*, 930 F.2d 764, 768–69 (9th Cir. 1991); *McNeil v. Stanley Works*, 33 F. App'x 322, 325 (9th

20  Cir. 2002). As the United States Supreme Court explained, "the possibility of an unfavorable

21  change in law" is not grounds to deny dismissal for *forum non conveniens*. *Piper Aircraft Co.*, 454

22  U.S. at 236. For instance, the Ninth Circuit held Japan was an adequate alternative forum in

23  *Lockman Foundation* even though (A) the Japanese judicial system did not provide for jury trials,

24  as the plaintiff had requested, and (B) Japanese law may not recognize the plaintiff's RICO or

25  Lanham Act claims. *See Lockman Found.*, 930 F.2d at 768–69 (collecting cases).

26      Consistent with those principles, the Ninth Circuit in *McNeil v. Stanley Works* found that

27  Canada is an adequate alternative forum even if "the rights and legal protections provided by

28

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

[24] (*See* Compl. at ¶¶ 24–25).

Canadian law may be less extensive than those afforded by United States law." *McNeil*, 33 F. App'x at 325. Of particular relevance here, the *McNeil* court noted that Canada was an adequate alternative forum after "[defendant] stipulated that it would submit to jurisdiction in Canada should [plaintiff] bring his claims as crossclaims **in the Canadian litigation already pending between the parties**, or in a separate action." *Id.* (emphasis added). Other district courts in the Ninth Circuit have done so, as well. *See, e.g.*, *Etaliq, Inc. v. Cisco Sys., Inc.*, No. CV-113672 GAF (FFMx), 2011 WL 13220445, at *8 (C.D. Cal. July 20, 2011) (granting a motion to dismiss for *forum non conveniens* after "conclude[ing] that Canada is an available and adequate alternative forum").

There is undoubtedly an adequate alternative forum available to Plaintiff. He himself initiated the Canadian Proceedings to vindicate his rights arising from his purportedly wrongful termination as CEO and his removal as a Director. Only after Plaintiff was dissatisfied with the decisions of the Supreme Court of British Columbia in the Canadian Proceedings did he bring the instant action in this Court. Plaintiff is plainly seeking to collaterally attack the results in the Canadian Proceedings—and unduly burden the defendants in the process. This amounts to blatant forum shopping.

On these facts, the public-and-private-interest factor is also met. The evidence to be produced, facts to be presented, witnesses to be called, and arguments to be made in the pending Canadian Proceedings are the same those to be produced, presented, called, and made in this action. ***Plaintiff*** elected to bring his claims in the Canadian Court in the first instance. Only now that he is unhappy with the decisions against him does he seek to burden the Defendants with defending against litigation in this District, with which Ignite US otherwise has no sufficient contacts. Just as it fails to comport with fair play and substantial justice to assert jurisdiction over parties that have no sufficient contacts with Nevada, it does not serve public or private interests to subject the Defendants to simultaneous and duplicative actions in two separate forums. This action should be dismissed.

. . .

. . .

. . .

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

**D. Dismissal for Failure to State a Claim Against Ignite US.**

As detailed above, the Court should dismiss this action against Ignite US pursuant to Rule 12(b)(2) for lack of personal jurisdiction and/or Rule 12(b)(3) for improper venue. If the Court were to somehow deny relief on those grounds, however, it would see that the Complaint also fails to allege any claim for which relief could be granted against Ignite US.

**1.  None of Plaintiff's vague, group-pled claims allege any conduct by Ignite US.**

Plaintiff's claims fail as they are all impermissibly "group pled." Federal courts, including the Ninth Circuit, disapprove of summarily grouping defendants together so as to make "'everyone did everything' allegations." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). "[T]he well-established law in this circuit that so-called 'shotgun pleadings' do not satisfy Rule 8's notice requirement." *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023). "Plaintiff's failure to parse out which allegations are levied against which Defendants 'makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiff['s] allegations.'" *Id.* (citation omitted). "[B]y lumping all [Defendants] together, Plaintiff[ ] ha[s] not stated sufficient facts to state a claim for relief that is plausible against *one* Defendant." *In re iPhone App. Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) (emphasis in original); *see also Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) ("Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently.")Thus, courts regularly dismiss claims raised in shotgun or that "use impermissible 'group pleading'" to categorize "individual defendants into broad groups" without "plausibly alleg[ing] how any particular defendant's behavior was unlawful." *See, e.g., Dana v. Idaho Dep't of Corr.*, No. 23-35047, 2024 WL 2862581, at *1 (9th Cir. June 6, 2024).

Here, Ignite US is mentioned in only one paragraph of the Complaint, as follows: "Defendant Ignite International, Ltd. ('Ignite US') is a Wyoming corporation domiciled in California and Texas, and it is a wholly owned subsidiary of Ignite. Upon information and belief, Ignite US, together with Ignite, markets Ignite's products and is a licensor of Ignite's intellectual

property rights."[25] Nowhere else does Plaintiff reference Ignite US specifically. Instead, the entirety of Plaintiff's complaint is a shotgun pleading, with exclusively group-pled claims that make it impossible to determine in what, if any, misconduct *Ignite US* is alleged to have engaged. On these facts—or, rather, lack thereof—Plaintiff's Complaint against Ignite US must be dismissed.

### 2.   Each of Plaintiff's claims is otherwise fatally defective.

#### i.   *Misappropriation of statutory and common law right of publicity.*

"The elements of a claim of misappropriation of the right of publicity are '(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.'" *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016). However, the Ninth Circuit has acknowledged that many statutory or common law right of publicity claims are preempted by the federal Copyright Act. *See generally Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006). To avoid preemption, a right of publicity claim must "not concern the subject matter of copyright" while "contain[ing] qualitatively different elements than those contained in a copyright infringement suit." *Id.* at 1145.

No one, including Ignite US, can determine from these averments how Plaintiff's name and/ or likeness are being appropriated by any of the Defendants, let alone by Ignite US in particular. Nor can one distinguish between Plaintiff's common law publicity assertions and those he claims as copyrighted.

Moreover, as with the other claims one cannot determine what Ignite US is alleged to have done. It must be noted that the Complaint alleges Plaintiff directed his purported November 4, 2024, "demand to cease and desist from using his name and likeness and otherwise exploiting his intellectual property rights" only to Ignite International and not to Ignite US.[26] Taking the Complaint at face value, as the Court must, it fails to state a claim for relief against Ignite US in the First Claim for Relief.

. . .

---

[25] (Compl. at ¶ 11).

[26] (Compl. at ¶ 31).

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

### ii.  *Unfair competition and deceptive trade practices.*

Under Nevada's Deceptive Trade Practices Act ("DTPA"), a defendant is liable if it:

> Knowingly passes off goods or services for sale or lease as those of another person … [u]ses deceptive representations or designations of geographic origin in connection with goods or services for sale or lease … makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith … [or] [r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model.

Nev. Rev. Stat. § 598.0915(1), (4), (5), & (7); *see also BBK Tobacco & Foods, LLP v. Aims Grp. USA Corp.*, 723 F. Supp. 3d 973, 986 (D. Nev. 2024).

The Complaint's vague allegations fail to state a discernable connection between any of the Defendants and this statute. Again, the claim makes no specific allegation against Ignite US. The only averments germane to this claim assert that Ignite International, and no one else, was allegedly using Plaintiff's name, likeness and otherwise undescribed intellectual property rights in some unspecified manner. Again, taking the Complaint at face value, as the Court must, it fails to state a claim for relief against Ignite US on the Second Claim for Relief.

### iii.  *False designations of origin under the Lanham Act, 15 U.S.C. § 1125(a).*

To prevail on a claim of false association or false designation of origin, a plaintiff must plead and prove the following elements:

> (1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts.

*BBK Tobacco & Foods*, 723 F. Supp. 3d at 984 (quoting *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015)).

Concerning this Third Claim for Relief, Plaintiff generally avers that the Defendants used his "photograph, likeness, and persona" in promoting Ignite International after he was removed as

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

18 of 25

the CEO of that company and that they did so to enhance the goodwill of the Defendants. Two substantial flaws in this claim become immediately apparent.

First, Plaintiff fails to provide even one example where a word, term, name, device, or combination that was used in violation of 15 U.S.C. § 1125(a) after his alleged termination as CEO on December 21, 2023. (Plaintiff remained on the Ignite International board until June 2024.)[27]

Second, Plaintiff fails to allege that Ignite US used his "photograph, likeness, and persona." Once again, the Complaint alleges that Plaintiff only made demand on Ignite International and not Ignite US to cease and desist from its alleged uses.

The general and vague averments in the Complaint alone do not state a claim for violation of 15 U.S.C. § 1125(a), and the claim must be dismissed.

### iv. Trademark infringement under the Lanham Act, 15 U.S.C. § 1125(c).

To prevail on a trademark infringement claim, a plaintiff must show: "(1) it has a valid, protectable mark; and (2) the defendant's use of the mark is likely to cause consumer confusion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). However, 15 U.S.C. § 1125(c) specifically addresses dilution by blurring or dilution of a trademark by tarnishment. It allows the remedy of an injunction the following circumstances:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

This section, on its face, requires the use of a mark so similar to a Plaintiff's famous trade or service mark that will cause "cause dilution by blurring or dilution by tarnishment of the famous mark." Plaintiff does not plead either blurring or tarnishment in the Complaint, let alone attribute it to Ignite US. The Fourth Claim for Relief must also be dismissed pursuant to Rule 12(b)(6).

. . .

. . .

---

[27] (Compl. at ¶ 23).

1

v. *Accounting.*

2   "An accounting is an equitable remedy, not an independent cause of action." *W. Nev. Supply*

3   *Co. Profit-Sharing Plan & Tr. v. Aneesard Mgmt., LLC*, No. 3:09–CV–00737–ECR–VPC, 2011

4   WL 1118683, at *6 (D. Nev. Mar. 24, 2011) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478

5   (1962)). "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like

6   all other equitable remedies, is ... the absence of an adequate remedy at law." *Dairy Queen,* 369

7   U.S. at 478. *See also Douglas Coder & Linda Coder Fam. LLLP v. RNO Exhibitions, LLC*, No.

8   3:19-CV-00520-MMD-CLB, 2021 WL 1234500, at *1 (D. Nev. Apr. 1, 2021) ("[A]n accounting

9   is more of a remedy than a claim."); *Whittum v. Educ. Credit Mgmt. Corp.*, No. 2:18-CV-01495-

10  JAD-DJA, 2020 WL 3621342, at *2 n.13 (D. Nev. July 2, 2020) ("Whittum acknowledges that her

11  fifth 'cause of action' for declaratory relief and accounting is simply a prayer for those equitable

12  remedies."); *Nascimento v. Wells Fargo Bank, NA*, No. 2:11-CV-1049 JCM GWF, 2013 WL

13  6579575, at *7 (D. Nev. Dec. 13, 2013), *dismissed* (July 8, 2013) ("Plaintiff's last claim for relief

14  seeks accounting and declaratory relief. These are equitable remedies and not independent causes

15  of action.").

16   As accounting does not constitute a claim for relief, but only a remedy, the Fifth Claim

17  fails.

18  vi. *Unjust enrichment.*

19   Under Nevada law, "[u]njust enrichment has three elements: [1] 'the plaintiff confers a

20  benefit on the defendant, [2] the defendant appreciates such benefit, and [3] there is acceptance

21  and retention by the defendant of such benefit under such circumstances that it would be

22  inequitable for him to retain the benefit without payment of the value thereof.'" *Nautilus Ins. Co.*

23  *v. Access Med., LLC*, 137 Nev. 96, 101, 482 P.3d 683, 688 (2021) (citation omitted).

24   The averments of the Complaint do not allege any direct relationship between Plaintiff and

25  Ignite US by which Plaintiff could have conferred a benefit upon Ignite US. Thus, the cause of

26  action fails to meet all three elements for a claim of unjust enrichment, and it must be dismissed

27  pursuant to Rule 12(b)(6).

28  . . .

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

20 of 25

### vii.   Intentional interference with prospective economic advantage.

Plaintiff's Seventh Claim for Relief fails on its face. To prevail on an intentional interference with prospective economic advantage claim under Nevada law, Plaintiff must plead and prove five elements:

> (1) A prospective contractual relationship between the plaintiff and a third party; (2) The defendant's knowledge of this prospective relationship; (3) The intent to harm the plaintiff by preventing the relationship; (4) The absence of privilege or justification by the defendant; and (5) Actual harm to the plaintiff as a result of the defendant's conduct.

*Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1255 (1998) (quoting *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987)).

Like the Fifth Claim for Relief, the Sixth Claim for Relief of Plaintiff's Complaint fails to properly allege any of the required elements. It does not identify any prospective relationship between Plaintiff and any third party. As such, it cannot allege any Defendant's knowledge of such relationship. The claim also fails to allege intent on the part of Ignite US to harm Plaintiff by preventing some undisclosed prospective relationship, the absence of privilege and justification are not averred, and only a conclusory statement of damage is asserted.

Once again, this cause of action fails to allege a claim for which relief can be granted by this Court and it must be dismissed as to Ignite US.

### viii.   Declaratory relief.

The Eighth Claim for Relief is fatally defective as it is not a standalone cause of action and, under longstanding federal law, the Court should decline to issue a declaration that, as here, would not be helpful in resolving the dispute between the parties. Pursuant to the Declaratory Judgment Act, the court has the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In other words, the Declaratory Judgment Act allows federal courts to provide declaratory relief as a *remedy*—declaratory relief is not, itself, an independently actionable claim in federal court. *See, e.g., Villa v. Silver State Fin. Servs., Inc.*, No. 2:10-CV-02024-LDG, 2011 WL 1979868, at *10 (D. Nev. May 20, 2011). Even though the Declaratory Judgment Act "gave the federal courts **competence** to make a declaration of rights, it **did not impose a duty** to do so."

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

21 of 25

*Pub. Affairs Assocs. v. Rickover,* 369 U.S. 111, 112, (1962) (emphasis added). Consistent with declaratory relief remedial nature, the Declaratory Judgment Act does not create an independent basis for jurisdiction; rather, the party seeking declaratory relief must establish a "case of actual controversy." *Skelly Oil Co. v. Phillips Petro. Co.,* 339 U.S. 667, 671–72 (1950). *See also* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction … ."); *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (The court "must first inquire whether there is an actual case or controversy within its jurisdiction.").

"If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). "It is well settled, however, that a declaratory judgment may be refused where it would serve no useful purpose … ." *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 343 (9th Cir. 1966). Declaratory relief does not serve a useful purpose when "it is being sought merely to determine issues which are involved in a case already pending and can be properly disposed of therein … ." *Id.* Thus, "a court may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties." *Philips Med. Cap., LLC v. Med. Insights Diags. Ctrs., Inc.*, 471 F. Supp. 2d 1035, 1048 (N.D. Cal. 2007).

The court "must decide whether to exercise its jurisdiction by analyzing the factors set out in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), and its progeny." *Robinson*, 394 F.3d at 669. These factors include: (1) avoiding needless determination of state laws; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation. *See, e.g., Robinson*, 394 F.3d at 672; *Dizol*, 133 F.3d at 1225; *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371–73 (9th Cir. 1991). "This determination is discretionary, for the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority.'" *Dizol*, 133 F.3d at 1223 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (Reed, J., concurring)).

Here, the Court should construe Plaintiff's declaratory relief "claim" as, at most, a prayer for relief. The Plaintiff has not pleaded sufficient facts to establish the helpfulness of—let alone

Garman Turner
Gordon llp
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

22 of 25

his entitlement to—a declaration from this Court. What Plaintiff *does* plead proves this Court should decline to exercise jurisdiction over the declaratory relief claim for two reasons. First, declaratory relief will not be helpful in this case as it is being sought merely to determine issues which are involved in a case already pending (i.e., the Canadian Proceedings) and can be properly disposed of therein. *Compare McGraw-Edison Co.*, *supra*. Second, the *Brillhart* factors cut against Plaintiff because his declaratory relief claim is transparently an attempt to forum shop—which this Court should discourage, not reward. *Compare Robinson*, *supra*. Accordingly, the Court should dismiss the Eighth Claim for Relief.

### ix. Copyright infringement.

Plaintiff's Ninth Claim for Relief also fails on the face of the Complaint. Federal law unambiguously provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). The United States Supreme Court has confirmed this express statutory requirement: "Before pursuing an infringement claim in court, however, a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (citing 17 U.S.C. § 411(a)). "Compliance with the registration requirements of 17 U.S.C. § 411(a) is not a condition of copyright protection **but is a prerequisite to suing for infringement**." *Ambrosetti v. Oregon Cath. Press*, 458 F. Supp. 3d 1013, 1016 (N.D. Ind. 2020) (emphasis added).

Plaintiff's copyright infringement also fails as a factual matter. The Complaint specifically avers only that (A) various unspecified pictures and videos appear on Ignite's websites and social media platforms, and (B) certain photographs are "copyrighted."[28] Plaintiff does not allege any copyright infringement specifically by Ignite US, does not identify which photos are copyrighted, and does not specify who holds the purported copyright.

Moreover, the cause of action fails to state claim for relief as a matter of law. Plaintiff fails to aver that he federally registered his purported copyright. Instead, Plaintiff alleges that he owns

---

[28] (Compl. at ¶ 24).

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

a copyright as the term is used in 17 U.S.C. § 501, and that he owns the exclusive right to derivative works as defined in 17 U.S.C. § 106 (1)–(3).[29] This is insufficient as a matter of law because, as set forth above, registration is a *prerequisite* to filing an action pursuant to 17 U.S.C. § 501, *et seq.* Accordingly, this claim must be dismissed.

**IV.**

<u>**CONCLUSION**</u>

Ignite US, Plaintiff, and the other yet-to-be-served defendants are already embroiled in litigation in Canada to address the issues raised in the instant Complaint. Plaintiff re-raised these issues in this jurisdiction only after receiving several adverse rulings and determinations in the Canadian Proceedings. Unfortunately for Plaintiff, this Court does not have personal jurisdiction— whether general or specific—over Ignite US. Further still, this Court is an improper and inconvenient forum. All of these defects warrant dismissal of this action so that the claims can be fully and finally adjudicated in Canada. Even if this Court is inclined to find, retain, and exercise jurisdiction over this case and personal jurisdiction over Ignite US, Plaintiff's Complaint fails to state a claim against Ignite US upon which relief can be granted. The Court should grant the Motion and either dismiss this case or, at the very least, dismiss all claims against Ignite US.

DATED December 17, 2024.

**GARMAN TURNER GORDON LLP**

*/s/ Eric R. Olsen*
ERIC R. OLSEN (SBN 3127)
ERIKA PIKE TURNER (SBN 6454)
STEVEN E. KISH III (SBN 15257)
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: (725) 777-3000

*Attorneys for Defendant*
*Ignite International, Ltd.*

---

[29] (Compl. at ¶¶ 83–84).

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000

24 of 25

## CERTIFICATE OF SERVICE

The undersigned, an employee of Garman Turner Gordon LLP, hereby certifies that on the 17th day of December 2024, he caused a copy of the foregoing **IGNITE INTERNATIONAL, LTD.'S MOTION TO DISMISS** to be served electronically to all parties of interest through the Court's CM/ECF system as follows:

Jakub P. Medrala, Esq.
THE MEDRALA LAW FIRM, PROF. LLC
615 S. 6th Street
Las Vegas, Nevada 89101
Email: jmedrala@medralaw.com
*Attorneys for Plaintiff Dan B. Bilzerian*

*/s/ Max Erwin*
An employee of
GARMAN TURNER GORDON LLP

GARMAN TURNER
GORDON LLP
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
(725) 777-3000