# EXHIBIT 6

# EXHIBIT 6



# Court Services Online
## Purchase Documents Online Request

Date: 11-DEC-2024

### Sent From:

Vancouver Law Courts
800 Smithe St.
Vancouver BC  V6Z2E1
Canada

### Request Details:

Request Id:        664741
Transaction Id:    107362564
Court File #:      VLC-S-S-245663
Date Requested:    10-DEC-2024
Requested By:      Gudmundseth Mickelson LLP

### Attention:

Forest, Janis
Gudmundseth Mickelson LLP
Fax #: 1-6047570351
jdf@lawgm.com

### Documents Requested:

Reasons For Judgment (30-OCT-2024)                10-DEC-2024

**Comments:** Faxed on December 11, 2024/ BM

Thank-you for using Court Services Online

Total Pages sent including cover sheet: 11

**ORIGINAL**

# IN THE SUPREME COURT OF BRITISH COLUMBIA

Date: 20241030
Docket: S245663
Registry: Vancouver

Between:

**Dan Brandon Bilzerian also known as Dan Bilzerian**

Petitioner

And

**Ignite International Brands, Ltd., International Investments, Ltd., Gregory Gilpin-Payne, Scott Rohleder, Robin Rodriguez, Thomas Bunker and Ralph Gilpin-Payne**

Respondents

Before: The Honourable Justice Tammen

## Oral Reasons for Judgment

In Chambers

| | |
|---|---|
| Counsel for the Petitioner: | T. McDonald<br>B. Campbell<br>R. Yanke |
| Counsel for the Respondent, Ignite International Brands, Ltd.: | M.D. Shirreff |
| Counsel for the Respondents, International Investments, Ltd., Gregory Gilpin-Payne, Scott Rohleder, Robin Rodriguez, Thomas Bunker and Ralph Gilpin-Payne: | H.A. Mickelson, K.C.<br>A. Dosanjh<br>G. Boothroyd-Roberts |
| Place and Date of Trial/Hearing: | Vancouver, B.C.<br>October 23 - 25, 2024 |
| Place and Date of Judgment: | Vancouver, B.C.<br>October 30, 2024 |

[1]     **THE COURT:** When this hearing commenced on October 23, 2024, there were four applications scheduled to be heard over the ensuing three days. At the conclusion of the hearing on October 25, 2024, I made various interim orders relating to some of those applications.

[2]     What remains for determination are the following:

1. The application of a group of shareholders, said to constitute a majority, for fairly broad injunctive relief against the petitioner, Dan Bilzerian (hereafter "D.B."), a minority shareholder and former director and officer. In the main proceeding, D.B. seeks to be reinstated as sole director and CEO, relying primarily on the oppression remedy in the BC *Business Corporations Act*, S.B.C 2002, c 57.

2. The application of the company, Ignite International Brands Ltd., to have D.B. return control to the company of its social media accounts, specifically one Instagram account.

[3]     The litigation to date has a tortured history, which I will not even attempt to summarize, much less describe in detail. At its core, this is a dispute over control of the company, Ignite, which primarily sells vaping and related products, largely by using the social media celebrity status of D.B. as its marketing platform.

[4]     From late December 2023 to the beginning of June 2024, D.B. was the sole director and CEO of Ignite pursuant to an unusual agreement reached at the AGM, which commenced in December 2023 and concluded in January 2024.

[5]     On June 2, 2024, D.B. was removed as sole director and CEO by a majority shareholder vote. There seems to be little doubt that such a method of removal was not in keeping with the corporate articles, and thus, D.B. has a strong case that his ouster was not properly done.

[6]     Unfortunately, in his efforts to regain his positions with Ignite and, by extension, control of the company, D.B. and his original lawyers, *not* counsel who

appeared before me, have made a series of serious missteps which have led to D.B. either wittingly or unwittingly abusing the process of this court. It is those missteps which I will not outline. A thorough review of the pleading and litigation history will make plain the reasons I say D.B.'s overall conduct has been an abuse of the court process. Distilling that to its essence would produce a fine law school exam fact pattern, but would serve no useful purpose in these reasons.

[7]    I have concluded that I should decline to grant the broad injunctive relief sought by the shareholder applicants, the IIL group, but, rather, should attempt to craft more surgical orders which will hopefully serve the broader interests of the company and permit it to conduct its corporate business in an orderly fashion.

[8]    The primary reasons I have decided not to grant the broad injunctive relief to the petition respondent shareholders are these:

1. Their lack of clean hands based on the June 2, 2024, removal of D.B. as sole director and CEO.

2. I have judicial misgivings about the appropriateness of some of the relief they seek in the context of D.B.'s petition proceedings. For example, it is likely the company which must seek orders related to non-competition, not a different group of shareholders. A case could be made that perhaps the other shareholders should have filed their own petition alleging oppression and sought to have it joined with the D.B. petition.

3. I am far from persuaded that the shareholders have a claim in oppression against D.B., another minority shareholder. There is much merit to D.B.'s submission that he has no ability to oppress the other shareholders, particularly by the type of conduct which they seek to enjoin.

[9]    The relief I am inclined to grant is this:

1. The return to the company of the social media passwords to restore control of any social media messaging to the company.

2024/Dec/11 12:28:08 PM    Ministry of Justice 604-660-2429    5/11
Case 2:24-cv-02101-RFB-NJK    Document 9-7    Filed 12/17/24    Page 6 of 12

*Bilzerian v. Ignite International Brands, Ltd.*    *Page 4*

2. An order that an AGM be held and some ancillary directions in that regard.

3. Some very specific injunctive relief related to D.B.'s conduct between now and the AGM or the hearing of his petition.

[10] The reasons for each of those decisions follow.

**Return of Social Media Passwords**

[11] It is appropriate for the company to have control of its own social media messaging. I am not concerned with the ability of the company to bring this particular application in the context of D.B.'s petition proceedings. The reason the company was not able to assert this claim until comparatively recently relates directly to D.B.'s inappropriate earlier filings in which he purported to have initiated proceedings on behalf of the company, when he had no right or authority to do so.

**Holding an AGM**

[12] I make the direction pursuant to s. 186 of the *Business Corporations Act,* S.B.C. 2002, c 57. The primary reason I do so is to inject some clarity and stability to the status quo of the company governance, pending whatever litigation will next occur.

[13] I also tend to agree with the submission that it is appropriate to hold an AGM in light of the grand jury indictment filed in the US district court for the Central District of California on September 26, 2024, in which the company is one of the entities accused of criminal conduct.

[14] There is much force to D.B.'s submission that the respondents inappropriately stripped him of his position as sole director on June 2, 2024. I will not comment on the initial attempt to regularize that action by attempting to hold either an AGM or SGM in July 2024. Suffice it to say that D.B. attempted to forestall that meeting and, when it was ultimately held in early August, took the position that it was non-compliant with the corporate articles.

2024/Dec/11 12:28:08 PM　　　　　Ministry of Justice 604-660-2429　　　　　　　6/11
Case 2:24-cv-02101-RFB-NJK   Document 9-7   Filed 12/17/24   Page 7 of 12

*Bilzerian v. Ignite International Brands, Ltd.*　　　　　　　　　　　　　　**Page 5**

[15]　D.B.'s application to have himself reinstated as sole director on an interim basis pending final resolution of his claims was heard by Justice Masuhara on October 7, 2024, and dismissed. Thus, the status quo is that he is no longer a director of the company.

[16]　D.B. cannot have had a reasonable expectation that there would not be a proper AGM sometime in either 2024 or early 2025. Given that he at no material time has held more than 50% of the voting shares of the company, he could not have had a reasonable expectation that he could continue indefinitely as sole director. He could not have controlled the outcome of any election of directors at an AGM, given his proportionate shareholdings.

[17]　D.B.'s argument that the IIL group does not legitimately hold more than 50% of the voting shares is extremely weak. It appears from the evidence that the option to convert to voting shares was solely that of the noteholder, IIL. Even had he remained the sole director, it is doubtful that D.B. could have prevented the conversion from occurring.

[18]　In any event, approximately 3 to 5% of the shares are held by non-parties to this litigation. By holding an AGM and electing directors, those parties will have an opportunity to vote. That may be useful information for all those involved in this litigation to possess. If D.B. is correct that he holds 46% and IIL effectively controls 49% of the vote, the other 5% would be needed by DB to tip the scales in his favour.

**Injunctive Relief Against DB**

[19]　I am going to grant some of the injunctive relief sought against D.B., but will attempt to be comparatively surgical in that regard. I do so to ensure that the company can function as smoothly as possible, at least until the AGM. The main reason I am making orders which proscribe certain conduct on the part of D.B. is that he, having sought the assistance of the court through his litigation, has nonetheless, demonstrated a pattern of conduct of attempting to gain the very relief he is seeking to have the court grant by other wholly inappropriate means. Here, I refer primarily to the following:

2024/Dec/11 12:28:08 PM    Ministry of Justice 604-660-2429    7/11
Case 2:24-cv-02101-RFB-NJK   Document 9-7   Filed 12/17/24   Page 8 of 12

*Bilzerian v. Ignite International Brands, Ltd.*    Page 6

1. D.B.'s email to all Ignite employees on October 4, 2024, advising them that, in light of the indictment, he was installing two individuals as directors, and telling the employees their options were to either support his team or resign. D.B. then filed an *ex parte* application to appoint himself as sole director and the other two individuals as CEO and COO on October 4, 2024. D.B. then wrote to Mr. Dhadwar, the CEO of Ignite, and purported to instruct Mr. Dhadwar that a different individual had been appointed by D.B. as CEO and that Mr. Dhadwar should report to that individual. All of the above occurred after D.B. filed his original application seeking to be reinstated as sole director, which was unable to be fully heard in August 2024.

2. D.B.'s efforts to have the corporate registry of Ignite's British Columbia subsidiary changed to reflect himself as sole director on October 11, 2024, four days after Justice Masuhara heard and dismissed his application for injunctive relief.

[20] In conclusion, I make the following orders:

1. I grant the order of Ignite on the terms set out in the proposed draft provided by Mr. Shirreff at the commencement of his submissions, namely:

    a) The petitioner, Dan Brandon Bilzerian, also known as Dan Bilzerian, will return control of and grant access to Ignite's Instagram account ("@ignite") to Ignite, including by providing all usernames and passwords and approving any necessary account changes to effect the transfer, within three days of the making of this order.

    b) Subject to further order of the court or written consent of the petitioner, after the date of this order, Ignite will not post the petitioner's name, image, or likeliness on @ignite.

    c) If the court orders that the petitioner is reinstated as the sole director of Ignite, on written request of the petitioner to Ignite within three days of the request, Ignite will transfer control of @ignite back to the petitioner.

    d) During the course of this proceeding, all parties have liberty to seek further orders of the court with respect to the Ignite Instagram account.

2. I direct the company, Ignite International Brands Ltd., hold an annual general meeting no later than December 20, 2024, and that the company comply with all provisions of the *Business Corporations Act*, S.B.C. 2002, c 57 and its own corporate articles and bylaws, which pertain to the procedures for holding such a meeting.

3. Dan Bilzerian is prohibited from purporting to have authority to act on behalf of Ignite or its subsidiaries, including with respect to Ignite's or its subsidiaries' corporate records and in communication with employees of Ignite or its subsidiaries, until such time as one of the following events occurs:

    a) he is elected as a director of Ignite or appointed as an officer of Ignite by its directors;

    b) he receives written permission from the directors of Ignite;

    c) there is a court determination of his petition proceedings in his favour; or

    d) other further order of the court.

[21] Finally, with respect to costs, I am strongly of the view that the shareholder parties should bear their own costs. None of those parties came to this court with wholly clean hands. The company might be entitled to costs of its application against D.B. but, from my reading, has not sought costs in its notice of application.

2024/Dec/11 12:28:08 PM                    Ministry of Justice 604-660-2429                                9/11
Case 2:24-cv-02101-RFB-NJK   Document 9-7   Filed 12/17/24   Page 10 of 12

*Bilzerian v. Ignite International Brands, Ltd.*                                              **Page 8**

[22]    That concludes my reasons, but there are two things that I think warrant a little bit further discussion before we rise. First of all, with respect to costs, I want to be clear, I did not hear full submissions on costs against all the permutations that might occur in this case. Mr. Shirreff is not here, so I do not want to say too much about what I noticed in his notice of application, which is that he did not seek costs. I do not know if I have the authority to order those.

[23]    And as much as I absolutely hate to encourage parties to make further submissions on costs, I do not see how I can avoid that in this case. If any party wishes to make any submissions on costs, they should do so in writing, after first exchanging any submissions they wish to make on costs. And if there are to be any submissions exchanged by the parties, that should be done within 30 days of the date of this order.

[24]    But let me just go off script a bit here. Again, I am not encouraging voluminous filings about costs. I think it is a complete waste of time in the context of this litigation to be fussing over costs over something like this, so the parties are forewarned. And if you do submit written submissions to me on costs, I will give you some kind of written judgment in the fullness of time. It might be a very, very, long time before you have that judgment. It is going to go to the very bottom of my reserved judgment priority list, and I think counsel understand why.

[25]    That is all that I have to say about costs.

[26]    Finally, I wanted to say something primarily to counsel for Mr. Bilzerian about the injunctive relief I have granted. I was cognizant of the fact that I should be cautious in proscribing his ability to express himself. That is why the proscription on communication is very narrow. It proscribes him from purporting to have the authority to act as a director in communicating with employees of Ignite or its subsidiaries. It is very narrow.

[27]    For instance, I am not encouraging this, but I did not want to put a complete social media gag on Dan Bilzerian. He has got his own personal accounts, and he is

free to say what he wants about this case and his belief that he was wrongly removed as a director. That is up to him. There is no prohibition, but he cannot purport to have the authority of a director until he actually does. I hope that is clear.

[28]　Mr. Mickelson?

[29]　CNSL H. MICKELSON: Yes. And just on that point -- I was just conferring with Mr. Dosanjh as you were speaking, and then just on that last clarification, I think earlier in your reasons, you were commenting about that direction in the context of sort of maintaining some order for the surgical order, you know, till we get to a next juncture, and you've got that Mr. Bilzerian is prohibited from purporting to have authority. And I understand that this is the purporting to have authority to act on behalf of Ignite or its subsidiaries, and then you say "including" and you mention those two. But I just want to just -- I think it's important to clarify he's also purported to have authority in writing to suppliers and distributors, and I take your orders as being inclusive of that, bearing in mind your comments about his social media commentary that he would say wrongfully removed. But I just wanted to be clear that I -- as I read what you're saying is consistent with your objects that it's -- like, you mentioned employees and, I think, the records office, but you did have -- also had evidence where he wrote to a supplier and said --

[30]　THE COURT: Yes.

[31]　CNSL H. MICKELSON: -- I'm the director, and then he wrote and said to -- you know, what do I do with this? Who's in charge? So I'm presuming your order -- you mentioned those two, but it's just between now and the next juncture, don't purport to people --

[32]　THE COURT: Yes.

[33]　CNSL H. MICKELSON: -- that you're the director. Thank you.

[34]　THE COURT: And that part -- that specific wording you have just referenced, Mr. Mickelson -- that was directly from Mr. Dosanjh's proposed draft order.

2024/Dec/11 12:28:08 PM　　　　Ministry of Justice 604-660-2429　　　　11/11
Case 2:24-cv-02101-RFB-NJK   Document 9-7   Filed 12/17/24   Page 12 of 12

**Bilzerian v. Ignite International Brands, Ltd.**　　　　　　　　　　**Page 10**

[35]　CNSL H. MICKELSON: Yes.

[36]　THE COURT: And yes, that is what it means. So, for clarity, the order does proscribe him writing to suppliers and any other corporate entity purporting to have the authority of a director until such time as one of those triggering events occurs.

[37]　CNSL H. MICKELSON: Thank you.

[38]　THE COURT: All right. We will adjourn.

*Tammen J.*