

1 | **JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
2 | **The Medrala Law Firm, Prof. LLC**
615 S. 6th Street
3 | Las Vegas, Nevada 89101
(702) 475-8884
4 | (702) 938-8625 Facsimile
jmedrala@medralaw.com
5 | *Attorney for Plaintiff*
DAN BILZERIAN

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| DAN BILZERIAN, an Individual, | Case No. 2:24-cv-02101-RFB-NJK |
|---|---|
| Plaintiff, | |
| vs. | **PLAINTIFF'S MOTION FOR A PARTIAL SUMMARY JUDGMENT REGARDING THE REQUEST FOR DECLARATORY RELIEF** |
| IGNITE INTERNATIONAL BRANDS, LTD., a Foreign Corporation, IGNITE INTERNATIONAL, LTD., a Foreign Corporation; PAUL BILZERIAN, an Individual; SCOTT ROHLEDER, an Individual; RUPY DHADWAR, an Individual, | |
| Defendants. | |

Plaintiff DAN BILZERIAN ("Plaintiff" or "Dan") respectfully submits his Motion for Partial Summary Judgment for the Eighth Claim for Declaratory Relief. Plaintiff requests that this Court enter a declaration that Plaintiff is not precluded from competing with Ignite International Brands, Ltd. ("Ignite"), Ignite International, Ltd. ("Ignite US"), or other businesses belonging to or controlled by the Defendants.

/ / /

/ / /

/ / /

/ / /

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Dan Bilzerian makes much of his income from using his fame to advertise products, either for his own business or for other businesses.[1] Plaintiff is particularly well known and associated with vape and alcohol products.[2]

However, the Defendants are wrongly claiming that the Plaintiff is precluded from competing with them or endorsing their competitors.[3] This has caused potential business partners to believe that they cannot work with the Plaintiff.[4] This is directly impacting the Plaintiff's ability to make a living.[5]

Furthermore, it is not and cannot be true. The Plaintiff has never signed a noncompetition agreement with the Defendants.[6] The Plaintiff has never stated that he would not compete with the Defendants.[7] To the extent that the Plaintiff might once have owed a duty of loyalty or some other duty to the Defendants due to his role as Ignite's director or executive, that duty was extinguished by the Defendants when they elected to remove him from his position with the company.[8] There is therefore no legal reason why the Plaintiff would be precluded from competing with the Defendants.

---

[1] Ex. 1, ¶ 3.
[2] *Id.*
[3] *Id.* at ¶ 11.
[4] *Id.*
[5] *Id.*
[6] *Id.* at ¶¶ 7-9.
[7] *Id.*
[8] Restatement (Second) of Agency § 393.

The Plaintiff therefore respectfully requests that this Court enter a declaratory judgment that the Plaintiff may compete with the Defendants, and in particular, that the Plaintiff may use his name, likeness, and image to advertise for vape and alcohol products.[9] Granting this declaration is supported by the law, and perhaps more significantly, it is supported by policy.

## II.  STATEMENT OF RELEVANT FACTS

The Plaintiff Dan Bilzerian is a famous poker player who has also spent significant time, effort, and money developing his personal brand and celebrity status.[10] Plaintiff has used his fame and his personal brand to promote products, including vape and alcohol products.[11] Before these disputes arose, the Plaintiff derived a significant amount of his wealth from promoting and helping to sell these products.[12]

Plaintiff was at one point closely affiliated with the Defendants. Specifically, until December 2023, Plaintiff served as the nominal CEO of Ignite.[13] However, Plaintiff was not involved in the day-to-day operations.[14] Plaintiff eventually became aware of the mismanagement of Ignite and certain behind-the-scenes acts by Rohleder and Paul that were causing harming to

---

[9] In making this request, Plaintiff acknowledges that the court in British Columbia entered an interlocutory order on 03/27/2025 under Docket S251196 purporting to find that Plaintiff could not compete against Ignite worldwide, including Nevada, and that he cannot even use his name and likeness to market other products. As already discussed in this case, Ignite's request to enter such an order was filed after the present lawsuit was filed in an apparent attempt to forum shop (ECF No. 29, p. 3). The Canadian Order, however, is irrelevant and not binding on this Court, as it applies laws with different policies than those controlling in the United States in general and in Nevada specifically. Moreover, the Court of British Columbia expressly relied on the fact that Plaintiff at that time sought to be reinstated as Ignite's director. The Plaintiff no longer seeks to be reinstated, creating a relevant change of circumstances.
[10] ECF No. 14-1, ¶ 14, Ex. 1, ¶¶ 3
[11] Id.
[12] Ex. 1, ¶ 13
[13] Ex. 1, ¶ 5.
[14] Id.

Ignite's business. This led to internal disputes. On or about December 21, 2023, Ignite's board of directors, which was controlled by Rohleder and Paul, terminated Plaintiff as CEO.[15]

Since then, Defendants have told others that the Plaintiff is barred from competing with them.[16] Potential business partners have believed these statements, making it difficult for the Plaintiff to continue his business of using his celebrity status and fame to help promote products, specifically including vape and alcohol products.

However, the Plaintiff never agreed that he would not compete with the Defendants.[17] He certainly never signed a noncompetition agreement and never made any representations that he would not compete with them. While he might possibly have at one time owed a duty of loyalty to the Defendants as Ignite's CEO, the Defendants themselves destroyed any such duty when they chose to remove the Plaintiff from his position with Ignite.[18]

### III. STANDARD FOR SUMMARY JUDGMENT

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] Material facts are those which may affect the outcome of the case.[20] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[21] A principle purpose of summary judgment is "to isolate and dispose of

---

[15] *Id.* at ¶¶ 5-6.
[16] *Id.* at ¶ 12.
[17] *Id.* at ¶¶ 9-10.
[18] *Id.* at ¶¶ 5-6
[19] Fed. R. Civ. P. 56(a).
[20] See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[21] *See id.*

factually unsupported claims."[22] In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party had the initial burden of establishing the absence of a genuine issue of fact on each issue material to the case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).

### IV.   ARGUMENT

Courts have authority to make appropriate declarations regarding rights and other legal relations.[23] Plaintiff asks that this Court make a declaration that the Plaintiff has the right to compete against the Defendants and to specifically declare that the Plaintiff may use his fame and celebrity status to advertise vape and alcohol products.

This request is directly supported by policy. In general, policy favors commercial competition.[24] These policies and the laws that uphold them help protect and benefit the public as producers and their supporters work to improve products or lower prices to compete.

---

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[23] NRS 30.030; *see also* NRS 30.040.
[24] *Perrin Bernard Supowitz, LLC v. Morales*, No. 23-55189, 2024 U.S. App. LEXIS 2513, *4 (9th Cir. Feb. 5, 2024) (noting California's determination of the value of open competition); *Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 716-17 (9th Cir. 2005) (noting the public interest in free and open competition in the context of the Lanham Act); *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 927 (9th Cir. 1980) (noting that the Sherman Act is meant to protect free and open competition).

The policies upholding free and open competition are not completely unlimited though. Nevada law permits the enforcement of reasonable and limited noncompetition agreements under some limited circumstances.[25] However, here, there is simply no noncompetition agreement.[26]

Nor does the Plaintiff owe any relevant duty of loyalty to the Defendants.[27] Under some circumstances, the law will presume that an employee, at least one with authority to act as an agent for the employer, is forbidden from directly competing with the employer.[28] However, unless extended by a lawful agreement, that duty is severed when the agency relationship ends.[29] In fact, without a lawful covenant to the contrary, it is even lawful for the employee to make preparations to directly compete with the employer while employed.[30]

Here, the Defendants chose to terminate the Plaintiff's employment. In doing so, they terminated any duty not to compete that might have been implied. Plaintiff does not seek to have his employment or position with Ignite reinstated.[31] Since there simply is no agreement in existence that might have extended the Plaintiff's duties not to compete past the time of his employment, the Plaintiff can have no such duty.

Accordingly, the requested declaration is supported both by law and by policy.

///

///

---

[25] NRS 613.195.
[26] Ex. 1, ¶ 9.
[27] Restatement (Second) of Agency, § 396(a).
[28] Restatement (Second) of Agency § 393.
[29] Restatement (Second) of Agency, § 396(a).
[30] Restatement (Second) of Agency, § 393 cmt. e; *White Cap Indus., Inc. v. Ruppert*, 119 Nev. 126, 129, 67 P.3d 318, 319 (2003) ("Moreover, the *Restatement* provides that an employee is permitted to make preparations to compete with his or her employer.").
[31] Ex. 1, ¶ 7.

## V. CONCLUSION

The Plaintiff respectfully requests that this Court enter a declaration that the Plaintiff may compete with the Defendants and, in particular, that the Plaintiff may endorse or otherwise assist in the selling of vape, alcohol, and any other products.

DATED this 16th day of April, 2025.

THE MEDRALA LAW FIRM, PLLC

/s/ Jakub P. Medrala

_____
**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
615 S. 6th Street
Las Vegas, Nevada 89101
*Attorney for DAN BILZERIAN*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, the above document was submitted to the electronic service system, which sent notification of such filings(s) to the defendants, which are registered for electronic service.

Respectfully submitted: April 16, 2025.

                THE MEDRALA LAW FIRM, PLLC

                /s/ Jakub P. Medrala
                Jakub P. Medrala
                Attorney for Plaintiff

8

# Exhibit 1

**Verification and Declaration of DAN BILZERIAN in Support of PLAINTIFF'S MOTION FOR A PARTIAL MOTION FOR SUMMARY JUDGMENT REGARDING THE REQUEST FOR DECLARATORY RELIEF**

I, DAN BILZERIAN, make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am over the age of 18 and am competent to testify as to the matters herein. I make this declaration. I have personal knowledge of the facts herein and make my declaration based on that knowledge, except for matters that are based upon information and belief.

2. Under penalties of perjury, the undersigned declares that he is the Plaintiff named in the foregoing Motion and knows the contents thereof; that the pleading is true of his own knowledge, except as to those matters stated on information and belief; and that as to such matters, he believes it to be true.

3. I am a well-known lifestyle influencer as well as a former professional poker player. I currently make my income from using my fame and celebrity to endorse vape products for my company SAVH, LLC ("SAVH") that is organized under the laws of the State of Delaware. I am the majority member of SAVH.

4. I am an American citizen and a resident of Nevada. I am a shareholder and a **former** CEO of Ignite International Brands, Ltd. (the "Company"), a Canadian lifestyle company selling disposable vapes, spirits, and apparel under the lifestyle brand "Ignite."

5. Until December 2023, I served as the nominal CEO of the Company. I was not directly involved in the Company's operations except for product development and marketing.

6. In June of 2024, I was removed from any position with the Company through unlawful acts of my father Paul Bilzerian and Scot Rohleder.

7. I do not intend to serve as Ignite's director, employee, executive, or agent.

8. My father, Paul Bilzerian, exercises de facto control at the Company through his proxies and agents. He frequently appointed and replaced the Company's CEOs and general counsel. The de facto CEO of the Company was Scott Rohleder, long-term accountant and proxy of Paul Bilzerian. Scott Rohleder was the Company's director, CEO, CFO, and COO at different times.

9. I have never entered into any noncompetition agreement, noncompete agreement, or restrictive covenant with the Company or any of the Defendants.

10. I have never received any compensation or other consideration in exchange for an agreement not to compete with Defendants.

1

11. My primary, and effectively only portion of my income source is derived from using my fame and celebrity to promote vape products for SAVH.

12. Many companies have refused to do business with me and SAVH, thereby costing me significant money, because they believe that I am prohibited from competing with the Defendants. The Defendants have been encouraging this belief.

13. I have been in the vape industry since 2015 when I founded Bilzerian E. Liquids – three years before the Company was created in 2018. The vape industry is heavily reliant on marketing and promotion rather than product differentiation. Disposable vape devices are battery-operated devices that vaporize e-juice into an inhalable aerosol. They are simple products, consist of a coil, battery, e-juice, and plastic casing. Except for their brand and taste, they do not differ in any significant way – similar to cigarettes.

14. The major Chinese manufacturers have a host of common and standard features for customization, and most vape companies offer vape devices with similar features. The product differentiation in this market occurs through the branding, which is in public view.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 16, 2025 in Las Vegas, Nevada.

_____
DAN BILZERIAN

2