**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
**THE MEDRALA LAW FIRM, PROF. LLC**
615 S. 6th Street
Las Vegas, Nevada 89101
(702) 475-8884
(702) 938-8625 Facsimile
*Attorney for Plaintiff*
*DAN BILZERIAN*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DAN BILZERIAN, an Individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>IGNITE INTERNATIONAL BRANDS, LTD., a Foreign Corporation, IGNITE INTERNATIONAL, LTD., a Foreign Corporation; PAUL BILZERIAN, an Individual; SCOTT ROHLEDER, an Individual; RUPY DHADWAR, an Individual,<br><br>  Defendants. | Case No.: 2:24-cv-02101-RFB-NJK<br><br><br>**PLAINTIFF DAN BILZERIAN'S OMNIBUS OPPOSITION TO DEFENDANT IGNITE INTERNATIONAL BRANDS, LTD.'s MOTION TO DISMISS** |

Plaintiff DAN BILZERIAN ("Mr. Bilzerian," "Dan", or "Plaintiff") submits his Response in Opposition ("Opposition") to Defendant Ignite International Brands, Ltd.'s ("Ignite") Motion to Dismiss ("MTD") (ECF No. 46).

## I.   INTRODUCTION

In yet another attempt to dismiss this lawsuit by one of the related Defendants, Ignite— a Canadian corporation conducting extensive business activities in the United States in general, and Nevada specifically, attempts to dismiss this action based on the same arguments that were raised by all of the other Defendants who thus far appeared in this action.

However, this Court does have personal jurisdiction over Ignite as well as all the other Defendants. The Court's exercise of jurisdiction over Ignite would comport with federal due process, because even though Ignite is not domiciled in Nevada, it conducts extensive business activities here, and it purposefully directed its tortious activities at the forum state.

1

Moreover, Nevada is the proper venue for Mr. Bilzerian's claims and is not an inconvenient one such that dismissal is warranted under the doctrine of forum non conveniens. The doctrine of forum non conveniens is a drastic exercise of the court's power that cannot be exercised based on the sole premise that the parties are also involved in another dispute in Canada.

Lastly, Plaintiff properly alleged all nine cognizable claims for relief against all Defendants.

## II.   FACTUAL BACKGROUND

*Dan Bilzerian and Ignite's Business*

Plaintiff is an internationally known poker player, businessman, and a social media influencer.[1] In 2017, he founded Ignite, a lifestyle brand selling disposable vapes, spirits, and apparel. While not directly involved in Ignite's operations, his name, likeness, and personality became the essence of Ignite, including all of the social media and other advertising and promotion.[2] Many of the pictures and videos used by Ignite and Ignite US in their marketing campaigns were taken in Las Vegas, Nevada, where Dan lives.[3] Ignite is a Canadian corporation selling electronic cigarettes, apparel, alcohol, water bottles, and other brand products.[4] Ignite International, Ltd. (Ignite US) is a Wyoming corporation, and it is a wholly owned subsidiary of Ignite. Ignite US, together with Ignite, market Ignite's products, and it is a licensor of Ignite's intellectual property rights.[5] Ignite and Ignite US utilize their distributor Summit Spirits and Wine, Inc. ("Summit Spirits"), a Nevada corporation located in Las Vegas, Nevada, to sell its products in Nevada.[6] Ignite also sells its alcohol products in Nevada through an extensive

---

[1] Complaint (ECF No. 1, ¶ 17).
[2] *Id.* ¶ 18.
[3] *Id.* ¶ 13, Bilzerian Decl. ¶ 24.
[4] *Id.* ¶ 10, Bilzerian Decl. ¶ 8.
[5] *Id.* ¶ 11.
[6] Duque Dec., ¶¶ 10 and 12; Bilzerian Decl. ¶ 18.

2

network of stores consisting of approximately 88 locations in Nevada, including a large chain, Lee's Discount Liquor.[7]

*Beginning of Dan's Dispute With Ignite*

Until December 2023, Dan served as the nominal CEO of Ignite. However, he was not directly involved in Ignite's operations and had a dispute with other Ignite shareholders—who later turned out to be Paul Bilzerian's – Dan's father ("Paul") agents—over the course of Ignite's business, the quality of Ignite's products, and Ignite's leadership. In essence, Dan complained about the mismanagement of Ignite and Scott Rohleder ("Scott") and Paul's behind-the-scenes acts that caused harm to Ignite's business.[8]

On December 18, 2023, Dan expressly advised the then-board of directors of Ignite that if they fired him as the CEO of Ignite, they would "lose the multimillion-dollar benefit of [his] social media posting" and "lose the rights to use [his] name and likeness."[9] Despite this, on December 21, 2023, Ignite's board of directors, which was controlled by Rohleder and Paul, terminated Dan as the CEO of Ignite. At the board meeting where this occurred, Dan again told the board that Ignite had no right to use his name, likeness, or image.[10] On June 2, 2024, Paul; and Rohleder also  removed Dan from the position of chairman of the board with and unilaterally and unlawfully seized control of Ignite's operations.[11]

*Ignite's Unlawful Use of Plaintiff's Name and Likeness*

Despite Dan's unlawful removal from Ignite, the Defendants continue to use Dan's name, image, and likeness, as well as copyrighted photographs, without his permission and without providing him with any compensation.[12]

---

[7]Bilzerian Decl. ¶ 16.
[8]*Id.* ¶ 18.
[9]*Id.* ¶ 21.
[10]*Id.* ¶ 22, Bilzerian Decl. ¶ 12
[11]*Id.* ¶ 23.
[12]ECF No. 1, ¶ 24.

*Canadian Proceedings*

As a result of Plaintiff's unlawful removal from Ignite, and because Ignite is a Canadian corporation, Plaintiff filed in Canada two petitions concerning Ignite's corporate governance.

Similarly to all the other Defendants who appeared in this action, however, Ignite attempts to mislead this Court and argue that "Plaintiff's claims in the Canadian Proceedings arise from the same transactions and occurrences as the instant action" (MTD, p. 2). They do not, and to clearly see this, it is important to summarize the various lawsuits that were commenced by the Plaintiff in Canada before the filing of this action and a different lawsuit commenced by Ignite against the Plaintiff AFTER the filing of the present action:

*Plaintiff's Initiated Proceedings in Canada Filed Before the Commencement of the Present Lawsuit*

- On July 8, 2024 (Ex. 1) (amended as of July 11, 2024, Ex. 2), the Plaintiff on behalf of Ignite, filed a petition with the Supreme Court of British Columbia, Case No. S244508, seeking to restrain certain individuals (including Scott Rohleder) from holding themselves out as Ignite's directors and officers and from restraining those individuals from undermining the Plaintiff as Ignite's sole officer and director (Ex. 1, pp. 3-4). This petition was defective and has been withdrawn by the Plaintiff. These proceedings raise no claims that were raised by the Plaintiff in the present action.
- On August 19, 2024 (Ex. 3)(amended as of September 16, 2024, Ex. 4), the Plaintiff, this time on his own behalf, filed a petition with the Supreme Court of British Columbia, Case No. 245663 seeking virtually the same relief as the July 8, 2024, petition (Ex. 1, pp. 1-2), but he is seeking it on his own behalf, and not on behalf of Ignite. The Plaintiff has since withdrawn his demand that he be reinstated as an officer or director of Ignite. These proceedings also involve Ignite's erroneously granted request to seize Mr. Bilzerian's social media account (ECF No. 46-7). These proceedings raise no claims that were raised by the Plaintiff in the present action.

*Defendant's Proceeding in Canada Filed After the Commencement of the Present Lawsuit*

- On February 14, 2025, long after the Plaintiff filed the present lawsuit, Ignite filed a Notice of Civil Claim in the Supreme Court of British Columbia, Case No. 251196, seeking a declaration from this court that he can compete with Ignite (Ex. 5, p. 12).

Coincidently, Ignite's proceedings under Case No. 251196, filed on February 14, 2025, are the specific and only "Canadian Proceedings" that "arise from the same transactions and occurrences in the instant action" (MTD, p. 2). This is specifically so because in the present lawsuit filed on November 12, 2024, the Plaintiff raised the issue of the Defendants interfering with the Plaintiff's new business ventures and asked for declaratory relief stating that he is not prevented from conducting any business activities that compete with Ignite's Business (ECF No. 1, ¶¶ 74-84). In response, Ignite filed a competing lawsuit in Canada in a blatant attempt to forum shop and to preempt the jurisdiction of this court.

In other words, in its Motion, Ignite seeks a dismissal of this *earlier-filed* action based on the fact that it *later filed* a different action in Canada stemming "from the same transactions and occurrences in the instant action" (MTD, p. 2).

### III.   ARGUMENT

### 1.   This Court Has Personal Jurisdiction Over Ignite

#### a)  Legal Standard

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.[13] Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.[14]

For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

---

[13] *Mavrix Photo Inc. v. Brand Techs. Inc.*, 647 F.3d 1218 (9th Cir. 2011).
[14] *Id.* (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)).

PLAINTIFF DAN BILZERIAN'S OPPOSITION TO DEFENDANT IGNITE INTERNATIONAL BRANDS, LTD.'S MOTION TO DISMISS

justice.'"[15] Personal jurisdiction over a nonresident defendant may be either general or specific.[16] Both general and specific jurisdiction are established in the present case.

### b) The Court Has General Jurisdiction Over Ignite

To establish general jurisdiction, "the defendant must engage in 'continuous and systematic general business contacts,' . . . 'that approximate physical presence in the state.'"[17] The standard for general jurisdiction is an exacting standard because general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.[18]

Ignite's contacts with Nevada are nothing but substantial, continuous, and systematic. Based solely on what has been able to be deduced without any jurisdictional discovery, Ignite has an extensive and continuous business and marketing presence in Nevada.

Despite Rupy Dhadwar's ("Rupy") declaration in support of the MTD, in Nevada, Ignite and Ignite US utilize their distributor Summit Spirits and Wine, Inc. ("Summit Spirits"), a Nevada corporation located in Las Vegas, Nevada, to sell its products in Nevada.[19] Ignite sells its alcohol products through an extensive network of stores consisting of approximately 88 locations in Nevada, including a major seller, Lee's Discount Liquor.[20,] Ignite US specifically targets advertisement of its products and services to Nevada residents.[21] Moreover, many of the

---

[15] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).

[16] *Helicopteros Nacionales de Colom. S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984). *See also Mayfair Mining & Mins., Inc. v. Davy*, No. 308CV00523LRHVPC, 2009 WL 10709637, at *2 (D. Nev. June 1, 2009) ("There are two theories by which a court may assert personal jurisdiction over a defendant: general jurisdiction and specific jurisdiction.").

[17] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)).

[18] *Schwarzenegger*, 374 F.3d at 801.

[19] Duque Dec., ¶ 10.

[20] Duque Dec., ¶ 6; Bilzerian Decl. ¶ 18.

[21] Duque Dec., ¶ 11; Bilzerian Decl. ¶¶ 11-25

6

pictures and videos used by Ignite in its marketing campaigns were taken in Las Vegas, Nevada.[22]

General jurisdiction over Ignite US exists because it has, for years, conducted business in Nevada and directly provides its products and services to Nevada residents.

### c) The Court Has Specific Personal Jurisdiction Over Ignite Due to Ignite Purposefully Directing Its Intentional, Tortious Activities at Nevada

A court may exercise specific jurisdiction over a nonresident defendant, if the defendant has "'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"[23]

The Ninth Circuit considers a three-prong test for analyzing specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.[24]

Plaintiff "bears the burden of satisfying the first two prongs of the test."[25] If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to set forth a "compelling case" that exercising jurisdiction would violate notions of fair play and substantial justice, i.e., be unreasonable.[26]

---

[22]Duque Dec., ¶ 13;  Bilzerian Decl. ¶ 24.

[23]*Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

[24]*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)).

[25]*Schwarzenegger*, 374 F.3d at 802.

[26]*Mavrix Photo Inc. v. Brand Techs. Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (If plaintiff satisfies first two prongs, "the burden then shifts to Brand to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable.").

With respect to purposeful contacts and connections with the forum state, physical presence in Nevada is not required, and any purposeful conduct within the state may be sufficient.[27] Where the damage at issue results from intentional conduct, less interjection into the forum is required to support jurisdiction.[28]

### i.    Defendant Purposefully Directed Its Unlawful Activities at Nevada

With respect to intentional intellectual property violations, the requirements for establishing jurisdiction in the plaintiff's home state are eased.[29] "The Ninth Circuit has noted that purposeful availment and purposeful direction are two distinct concepts."[30] "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."[31]

Purposeful direction is evaluated using the "'effects' test first established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)."[32] The purposeful direction test provides specific jurisdiction when "[t]he defendant . . . (1) committed an intentional act, which was (2) expressly aimed at the forum state . . . , and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state."[33] "In *Columbia Pictures*, the Ninth Circuit essentially deemed the effects/purposeful direction test satisfied when the defendant is being sued for intentional tort,

---

[27] *Rigdon v. Bluff City Transfer & Storage Co*., 649 F. Supp. 263, 266 (D. Nev. 1986).
[28] *Fegert, Inc. v. Chase Com. Corp*., 586 F. Supp. 933, 935 (D. Nev. 1984).
[29] *Id.* at 1140.
[30] *Id.*
[31] *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). With respect to the instant action for copyright infringement, this action "sounds in tort, and therefore a purposeful direction analysis is appropriate." *Id.* (citing *IO Grp., Inc. v. Pivotal, Inc*., No. C 03-5286 MHP, 2004 WL 838164, at *5, 2004 U.S. Dist. LEXIS 6673, at *17 (N.D. Cal. Apr. 19, 2004) ("Copyright infringement may be characterized as an intentional tort.")).
[32] *Id.* (citing *Schwarzenegger*, 374 F.3d at 803).
[33] *Id.* (citing *Bancroft*, 223 F.3d at 1087).

PLAINTIFF DAN BILZERIAN'S OPPOSITION TO DEFENDANT IGNITE INTERNATIONAL BRANDS, LTD.'S MOTION TO DISMISS

such as copyright infringement, the plaintiff brings suit in the forum where the plaintiff resides, and the defendant knows that the plaintiff resides there."[34]

As the Ninth Circuit pointed out in,[35] the United States Supreme Court "has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the foreign state is the 'purposeful direction' of a foreign act having effect in the forum state."[36]

In *Calder v. Jones*, the defendants were a reporter and editor who were Florida residents. The reporter wrote and the editor edited an article allegedly libeling the plaintiff in Florida. The defendants' newspaper printed the article in Florida and circulated it in California, where the plaintiff alleged it caused her injury. The Supreme Court held that even though the defendants were not responsible for the circulation of the article in California, they knew that their "intentional, and allegedly tortious, actions . . . would have a potentially devastating impact upon the plaintiff. *Id.* And they knew that the brunt of that injury would be felt by the plaintiff in the state in which she lived and worked. Because of this, the Supreme Court said that, "petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly caused the injury in California."[37]

It is clear that this Court has specific jurisdiction: Ignite under the business direction of Rohleder, Dhadwar, and Paul, among others, specifically directed the utilization and extensively utilized Dan's likeness, including but not limited to pictures, videos, signatures,

---

[34]*Id.* (citing *Columbia Pictures v. Krypton Broad.*, 106 F.3d, 284 (1997).

[35] *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir. 1986)

[36]*Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990) (citing *Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 1487 (1984)).

[37] *Calder v. Jones*, 465 U.S. 783, 790.

9

voice, and overall brand, for marketing in Nevada to sell Ignite's products.[38] Dan has alleged willful violations related to the use of his likeness in various pictures and videos on Ignite's websites and social media platforms, causing injury to Dan in Nevada, the location that defendants well knew was Dan's home.

Dan has alleged that all Defendants in this matter, which include Ignite, undertook to intentionally and wrongfully use his likeness, as well as intellectual property, such as copyright-protected materials, knowing full well that the impact of their actions would be felt by Dan in his home state of Nevada.[39] Significantly, Dan is widely known in to live in Las Vegas, Nevada, a fact publicly acknowledged by Defendants. Therefore, Defendants knew that their acts would cause harm in Dan's home state of Nevada.

### ii. Plaintiff's Claims Arise From Defendants' Nevada-Related Activities

The second prong of the test for specific jurisdiction requires that the claim against the defendant be one that arises out of or relates to the defendant's forum-related activities. "This factor is 'measured in terms of "but for" causation.'"[40] Here, "but for" Defendants' intellectual property violations such as unlawful use of Dan's likeness, publicity and copyright infringements, which reached into Nevada and adversely affected Dan in his home state, Dan's claim would not have arisen.[41]

---

[38] Duque Dec., ¶¶ 15 and 17; Bilzerian Decl. ¶¶ 27-28.

[39] *Id.*

[40] *Brayton Purcell*, 361 F. Supp. 2d at 1142 (citing *Bancroft*, 223 F.3d at 1088; *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (finding "[w]e must determine if the plaintiff . . . would not have been injured 'but for' the defendant's] . . . conduct directed toward [plaintiff] in [the forum]."); *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474 (9th Cir. 1995) (finding that "there is no dispute that 'but for' the contacts between defendant and [the forum], [plaintiff's] claims would not have arisen")).

[41] *See id.* (finding the second prong of the specific jurisdiction test easily met because "[b]ut for [defendant's] copyright infringement, which reached into this District and which affected [plaintiff] in this District, [plaintiff's] claim would not have arisen").

Furthermore, Ignite has transacted and continues to transact business in the District of Nevada to sell its products through unlawful use of Dan's likeness.[42] As discussed above, not only did Ignite purposefully avail itself of the privilege of conducting its business activities in the forum state of Nevada, Ignite purposefully directed its unlawful acts toward Nevada, harvesting a large income from its infringing activities.

It is Ignite's conduct, at Rohleder's, Paul's, and Dhadwar's direction, and contacts with the *forum* state that is the basis for this Court's jurisdiction over it. Consequently, Ignite US and Rohleder must submit to the burden of litigation in the *forum* State of Nevada.

### iii.    Exercise of Jurisdiction Over Defendant Is Reasonable

Finally, the third prong of the test for specific jurisdiction provides that the exercise of personal jurisdiction must comport with fair play and substantial justice. "There is a presumption that jurisdiction is reasonable so long as the first two prongs of the specific jurisdiction test have been met."[43]

---

[42]*See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002) (citing *Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 414-15 (1984)). *See also Alexander v. Circus Circus Enters., Inc.*, 939 F.2d 847, 853 (9th Cir. 1991) (describing "but for" test as requiring only that relationship between cause of action and defendant's forum contacts be such that "but for" defendant's contacts with forum state, cause of action would not have occurred); *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 382-86 (9th Cir. 1990) (finding that plaintiff's cause of action arose from defendant's forum state activities because "but for" those contacts, plaintiff's accident aboard defendant's cruise ship would not have occurred), *rev'd on other ground*, 111 S. Ct. 1522 (1991).

[43]*Brayton Purcell*, 361 F. Supp. 2d at 1143 (citing *Schwarzenegger*, 374 F.3d at 802 (stating that the plaintiff bears the burden of satisfying the first two prongs of the specific jurisdiction test and that, "[i]f the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable"); *Haisten v. Grass Valley Med. Reimbursement*, 784 F.2d 1392, 1397 (9th Cir. 1986) ("[T]here is a presumption of reasonableness upon a showing that the defendant purposefully directed his activities at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (stating that the above factors "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts that would otherwise be required")).

"In determining whether the exercise of jurisdiction over a nonresident defendant comports with 'fair play and substantial justice,' [a court] must consider seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. None of the factors is dispositive in itself; instead, [the court] must balance all seven."[44]

Turning into these factors, Defendants purposely interjected themselves into Nevada when they willfully and knowingly violated Dan's intellectual property rights. Additionally, Defendants have targeted Nevada consumers by marketing, advertising, and selling their products and services to Nevada residents while violating Plaintiff's publicity rights. Defendants have enjoyed significant profits as a result of their contacts with Nevadans.

Moreover, Ignite has contracts to distribute and sell its products and services throughout the country, and Nevada specifically. As such, it presumably has lawyers on staff to evaluate the laws of all 50 states as well. Ignite is well positioned to defend itself in Nevada, as well as in the courts of the other 49 states.

In addition, Dan has been damaged by the willful and knowing violation of his intellectual property rights. It is well established that Nevada has recognized a strong interest in providing an effective means of redress for its residents.[45] Plaintiff is the damaged party, and Nevada therefore has the greatest interest in the resolution of this dispute.

---

[44]*Id.* (quoting *Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993)).
[45]*Arbella v. Eighth Jud. Dist. Ct.*, 122 Nev. 509, 516-17, 134 P.3d 710, 715 (2006); *Levinson v. Second Jud. Dist. Ct.*, 103 Nev. 404, 408, 742 P.2d 1024, 1026 (1987).

PLAINTIFF DAN BILZERIAN'S OPPOSITION TO DEFENDANT IGNITE INTERNATIONAL BRANDS, LTD.'S MOTION TO DISMISS

The factors weigh heavily against Ignite and in support of the reasonableness of jurisdiction in the District of Nevada. In particular, the burden on Ignite to litigate the case in this district as opposed to any other forum, if any, is minimal. With respect to discovery, relevant documents will be found in the District of Nevada and elsewhere, as will relevant witnesses, such as Summit Spirits, Terrible Herbst and others. Presumably, depositions will take place wherever witnesses reside, be it Nevada, California, Texas, Wyoming, Canada, or elsewhere. The place and course of discovery would not be affected. Moreover, participation by the Defendants in court proceedings in this district will likely be limited to trial due to the widespread practice of conducting depositions remotely.

Lastly, there do indeed exist alternative fora to hear this case, such as Canada, Wyoming, California, Texas, North Carolina, or even St. Kitts and Nevis—all places where the Defendants are incorporated, domiciled, or reside. However, none of these fora is even remotely as convenient as Nevada due to the extent of the Defendants' unlawful acts, as well as the fact that all of these acts from the Defendants located in several different places of the world have one common denominator: unlawful use of the Plaintiff's likeness and intellectual property rights that are owned by the Plaintiff in Nevada.

## 2. The Forum Is Convenient

### a) Venue Is Proper in Nevada

Fed. R. Civ. P. 12, in pertinent part, provides that an action may be dismissed based upon "improper venue."[46] Dismissal is "only" proper "when venue is 'wrong' or 'improper' in the forum in which it was brought."[47] "[The] question—whether venue is 'wrong' or 'improper'—is generally governed by 28 U.S.C. § 1391."[48]

---

[46]Fed. R. Civ. P. 12(b)(3).
[47]*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55, 134 S. Ct. 568, 577 (2013).
[48]*Id.*

Ignite acknowledges in their motion that federal law prescribes the venue for civil actions. *See* 28 U.S.C. § 1391(b).

However, Ignite argues that venue is not proper in Nevada pursuant to 28 U.S.C. § 1391(b)(1)-(3). First, Ignite argues that venue is not proper under subsection (b)(1) as none of the Defendants reside in Nevada. Plaintiff concedes this point.

Next, Ignite argues that § 1391(b)(3) is inapplicable because there are other venues in which Ignite is arguably subject to personal jurisdiction. Although there are other venues in which Ignite may be subject to personal jurisdiction, Nevada is the proper venue as it is a "district in which [Ignite as well as the other Defendants] is subject to personal jurisdiction."[49] Not only does Nevada have an "interest in providing an effective means of redress for its residents," "[t]here is a strong presumption that a plaintiff has a right to choose his forum."[50] In fact, "[t]his presumption is particularly strong when a plaintiff has chosen to commence a lawsuit in his home forum."[51]

In addition, in its Motion, Ignite disingenuously and misleadingly claims that § 1391(b)(2) is inapplicable because

> Plaintiff's claims do not arise out of any property located in or action taken in Nevada. Rather, Plaintiff's claims arise from his alleged termination as Ignite Brands' CEO, his removal from Ignite Brands' Board of Directors, and Ignite Brands' alleged operation of unspecified "websites" and social media accounts, including a single identified "Instagram account called @ignite.intl." None of that conduct is alleged to have occurred in Nevada (Mtn. p. 13-14).

The court should take note of this manipulation on Ignite's part. This statement is nothing but a disingenuous prelude to the Defendant's argument that the same issues raised in the present action are already subject to the Canadian Proceedings. They are not.

---

[49] 28 U.S.C. § 1391(b)(3).
[50] *Goldweber v. Harmony Partners Ltd.*, 671 F. Supp. 2d 392, 395 (E.D.N.Y. 2009).
[51] *Id.*

14

It is the Canadian Proceedings that concern Plaintiff's unlawful removal from Ignite and Ignite's governance, not this lawsuit. The present lawsuit concerns the Defendants' intentional and tortious acts related to the unlawful use of Dan's likeness *after* his removal as the CEO and then-sole director of Ignite. Such tortious acts are indeed alleged to have occurred in the U.S. in general and Nevada specifically due to the Plaintiff's residence in Nevada, as well as the fact that Ignite sells its product in Nevada utilizing Plaintiff's name and likeness (ECF No. 1, ¶¶ 4, 5-7, 9, 34).

### b) The Doctrine of Forum Non Conveniens Is Inapplicable

"The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of the general venue statute."[52] The doctrine is an unusual departure from the normal rules and thus requires that the defendants prove the existence of "**exceptional circumstances**" warranting its application.[53] The doctrine is said to be a "an exceptional tool to be used sparingly" rather than a "doctrine that compels plaintiffs to choose the optimal forum for their claim."[54]

"To prevail on a motion to dismiss based upon forum non conveniens, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal."[55]

Relevant "private interests" include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for unwilling witnesses; (3) the possibility of a view of any affected premises; (4) the ability to enforce any judgments eventually obtained; and (5)

---

[52] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).
[53] *Magellan Real Est., Inc. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1148 (D. Ariz. 2000).
[54] *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).
[55] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915 (2016).

PLAINTIFF DAN BILZERIAN'S OPPOSITION TO DEFENDANT IGNITE INTERNATIONAL BRANDS, LTD.'S MOTION TO DISMISS

"all other practical problems that make trial of a case easy, expeditious and inexpensive."[56] "Public interest factors" include (1) court congestion, (2) the interest in having localized controversies decided at home, (3) the unfairness of burdening citizens in an unrelated forum with jury duty, and (4) the interest in trying the case in a forum familiar with the applicable law.[57] The analysis is to be guided by a general presumption in favor of the plaintiffs' choice of forum; the plaintiffs' choice will ordinarily not be disturbed unless the "private interest" and "public interest" factors strongly favor trial in the foreign forum.[58]

The Defendant's motion fails from the outset because it cannot demonstrate, as it must, that the courts of Canada will in fact provide a forum for adjudication of the Plaintiff's claims. An alternative forum is adequate if (1) the defendant is amenable to process there, and (2) the other jurisdiction offers a satisfactory remedy.[59]

In the present case, while Defendant Ignite is indeed amenable to process in Canada, the same cannot be said about other related defendants such as Ignite US, Scott Rohleder, or Paul Bilzerian, all whom reside outside of Canada. Moreover, the Plaintiff's lawsuit seeks injunctive and declaratory relief to be enforced in the United States—something that by definition requires involvement of a U.S. court, thus rendering the forum in Canada wholly inadequate. Accordingly, Canada does not provide an adequate forum to adjudicate the Plaintiff's claims.

---

[56] *Gulf Oil Corp.*, *supra*, 330 U.S. at 508; *Nebenzahl v. Credit Suisse*, 705 F.2d 1139, 1140 (9th Cir. 1983)

[57] *Gulf Oil Corp.*, *supra*, 330 U.S. at 508-09; *Ravelo Monegro*, *supra*, 211 F.3d at 512.

[58] *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524; *Contract Lumber Co. v. P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1449 (9th Cir. 1990); *SME Racks, Inc. v. Sistemas Mecanicos Para Electrolnica, S.A.*, 382 F.3d 1097, 1103 (11th Cir. 2004) ("by definition the plaintiffs' choice must win if all other factors are equal.")

[59] *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001).

The second step of the forum non conveniens analysis requires consideration of the private interests of the parties and the interests of the public in retaining the action for trial in Nevada.[60]

Mr. Bilzerian is a Nevada citizen, and Ignite is a Canadian company. The Plaintiff's claims stem from Ignite's unlawful use of the Plaintiff's name and likeness to sell its product, including in Nevada, as well as Ignite's attempts to interfere with the Plaintiff's business in the U.S. The dispute's tie to Nevada is not only the fact that the Plaintiff lives here, but also the fact that Ignite used the Plaintiff's name and likeness to sell infringing products in Nevada and elsewhere in the U.S. As such, the bulk of relevant evidence and witnesses will be in the U.S. and Nevada, and not in Canada. Moreover, since Plaintiff is a Nevada resident, his choice of forum commands substantial deference.[61]

Moreover, given the fact that the Plaintiff's claims largely involve claims arising out of Nevada and U.S. law, the local interest in retaining this dispute is great. Canada has very little interest in hearing a case brought by a U.S. citizen regarding a dispute that arises out of a Canadian corporation's (and its agents) conduct outside of Canada.[62]

### 3. The Claims Are Properly Stated and Directed Equally Against All Defendants

It is "only the extraordinary case in which dismissal is proper" for failure to state a claim.[63] A court may discuss a complaint as a matter of law only if the complaint (1) lacks a cognizable legal theory or (2) fails to contain sufficient facts to support a cognizable legal claim.[64] When ruling on a motion to dismiss, the court must assume that the complaint's factual allegations are true and should construe all inferences from them in the nonmoving party's

---

[60] *See Creative Tech., Ltd. v. Aztech Sys. Pte. Ltd.*, 61 F.3d 696, 699 (9th Cir.1995).
[61] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).
[62] Upon information and belief, Ignite conducts no sales activities in Canada.
[63] *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).
[64] *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

favor.[65] Fed. R. Civ. P. 8(a)(2) only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is, and the grounds upon which it rests."[66]

In the MTD, Ignite makes the same argument as the other Defendants who so far filed their motions to dismiss, i.e., that the complaint somehow summarily grouped all the Defendants, which somehow prevents them from understanding which allegations are directed at which Defendants. In support of its argument, Ignite cites inapplicable cases, such as *Destfino v. Reiswig*[67], a case involving a Plaintiff who filed a complaint against 29 individuals, 10 different businesses, and a church; or *Resh, Inc. v. Skimlite Mfg. Inc.*[68], a patent-infringement case in which the plaintiff allegedly stated, "depending on the context in which it is used herein, the term 'Defendants' is intended to include not only 'Skimlite' and 'James Conrad' and 'Barrett Conrad,' but also any and/or all other Defendants or any individuals or other entities." *Resh, Inc.*, 666 F. Supp. 3d at 1059.

The Plaintiff's complaint is far from being a "shotgun pleading." It clearly describes each of the Defendants' roles in violating Plaintiff's rights namely:

1. Ignite is a Canadian corporation selling electronic cigarettes, apparel and other product (Compl. ¶ 10);
2. Ignite US markets Ignite's products (*Id.* ¶ 11);
3. Paul controls some of the Ignite shareholders (*Id.* ¶ 13), controls its board of directors (*Id.* ¶ 22), and exercises control of Ignite's operations (*Id.* ¶ 23);
4. Rohleder, former Ignite CEO, is Paul's proxy in the U.S. (*Id.* ¶ 14); and
5. Dhadwar is the purported Ignite CEO and a puppet of Rohleder and Paul (*Id.* ¶ 16).

---

[65] *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[66] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[67] *Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011)

[68] *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054 (N.D. Cal. 2023)

In his complaint, Plaintiff is alleging that Defendants Ignite, Ignite US, Paul, Rohleder, and Dhadwar, either individually or in concert with other Defendants, and either directly or indirectly, have committed, but not limited to, misappropriation of Plaintiff's right of publicity; unfair competition; Nevada Revised Statutes, including, but not limited to, NRS 597.700 et seq., 598.0915(2), 598.0915(3), and 598.0915(5); 15 U.S.C. § 1125(a) and (c) (Lanham Act); and 17 U.S.C. §§ 501, 502, and 106(1)-(3).

These allegations are directed at all Defendants because, as it was stated above, Paul made various decisions to violate Plaintiff's rights, and these unlawful acts were then executed by Rohleder and Dhadwar in the name of Ignite and Ignite US. These are specifically why all of the complaint's claims are directed at all the Defendants.[69]

*Misappropriation of Right of Publicity*

In its MTD, Ignite claims that from reading the complaint it cannot determine how it has misappropriated the Plaintiff's name and likeness (MTD. p. 18).

The Plaintiff directs the Defendant's attention to the complaint in general (ECF No. 1), and to ¶¶ 24-25 specifically, which describe instances of such misappropriation. The Plaintiff alleges that all named Defendants have participated in such misappropriation at Paul's direction as the de facto decision-maker at Ignite (*Id.* ¶ 23).

*Unfair Competition*

Similarly, here Ignite complains that it cannot understand the connection between its unlawful acts and the Nevada Deceptive Trade Practices Act. The connection is simple: The Defendants (including Ignite) used, and continue to use, the Plaintiff's name and likeness to sell their goods, i.e., they misrepresent to the public that the goods they sell are somehow endorsed

---

[69]Perhaps the biggest issue with the Plaintiff's complaint is the fact that it lacks a claim of civil conspiracy among the Defendants to commit the unlawful acts described in the complaint. For this reason, the Plaintiff reserves the right to amend his complaint to add this claim.

by the Plaintiff, when they are not. Therefore, they make false representation as to the characteristics, sponsorship, approval, status, affiliation or connection, association with, or certification by another person. NRS 598.0915(2), (3), (5).

*False Designation of Origin and Trademark Infringement Under 15 U.S.C. § 1125(a)-(c)*

These claims are very similar to the unfair competition claim under Nevada law. Dan's distinct persona and likeness is his trademark that the Defendants, and each of them, unlawfully use to sell their goods in violation of the Lanham Act, diluting Dan's trademarks and service marks and misrepresenting to the public the origin of the Defendants' goods. These allegations are expressly stated in the complaint[70] (ECF No. 1 ¶¶ 56-57; 63-64). It is thus hard to understand why Ignite claims it cannot see them in the complaint.

In its MTD, Paul and Ignite claim that Plaintiff failed to provide an example of the Defendants unlawfully using Dan's name and likeness. Nowhere does Fed. R. Civ. P. 8 require the complaint to attach examples of a defendant's unlawful activities.

*Accounting*

In its MTD, similarly to the previous defendants, Ignite states that a claim for accounting should be dismissed because it is a remedy and not a claim for relief. While the Plaintiff agrees that accounting is a remedy and not an independent claim for relief, Fed. R. Civ. P. 8(a) does not require that a complaint be written in a certain way or contain specific headings or captions. All that is required is a short and plain statement of the claim showing that the pleader is entitled to relief pursuant to Fed. R. Civ. P. 8(a)(2).

*Unjust Enrichment*

In its MTD, Ignite takes issue with the fact that the complaint does not single out Ignite to state this claim.[71] Again, the reason for this is that this claim is alleged against ALL of the

---

[70] ECF No. 1, ¶¶ 56-57; 63-64.
[71] ECF No. 9, p. 20; ECF No. 11, p. 11.

PLAINTIFF DAN BILZERIAN'S OPPOSITION TO DEFENDANT IGNITE INTERNATIONAL BRANDS, LTD.'S MOTION TO DISMISS

Defendants and is based on the fact that they are using, for free, the Plaintiff's right of publicity and other intellectual property.

*Intentional Interference With Prospective Economic Advantage*

In his MTD, Ignite argues that the Plaintiff's complaint fails to allege the required elements of a claim for intentional interference with prospective economic advantage (MTD. p. 21).

To properly allege a claim for prospective economic advantage, the Plaintiff needs to plead the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. [72]

In his complaint, the plaintiff clearly alleged these elements:

> 34.  In response, Ignite, Paul, Rohleder, and Dhadwar engaged in a smear campaign against Dan in which they represented, and continue to represent, to potential suppliers and distributors of Dan's companies that Dan is legally prevented from competing in any way with Ignite's business.
>
> 35.  Ignite, Paul, Rohleder, and Dhadwar have falsely represented to Dan's potential suppliers and distributors that Dan is allegedly subject to a noncompete agreement with Ignite that prevents him from conducting any business that is similar to Ignite's business.
>
> 36.  These representations are utterly false and their sole aim is to discourage anyone from working with Dan or his entities and to prevent Dan from seizing any business opportunities outside of Ignite (Compl. ¶¶ 34-36).

Moreover:

> 70.  When the Defendants learned that the Plaintiff launched separate brands and business ventures from Ignite, they engaged in a campaign aimed at disrupting Dan's relationships with suppliers and distributors by misrepresenting to them that neither Dan nor his business ventures can enter into any business relationships with such

---

[72] *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987).

distributors or suppliers because of Dan's alleged noncompete agreement with Ignite.

71. The Defendants specifically stated to such suppliers and distributors that Dan cannot produce or sell any products or services that compete in any way with Ignite, and they threatened that anyone who facilitates such competing ventures will be sued by Ignite.

72. The Defendants made such false representations with the intent to harm Dan and prevent him from entering into any business relationships with suppliers or distributors of his products.

73. Through their wrongful conduct as alleged above, Defendants have damaged Plaintiff's prospective business relationships and caused irreparable injury to the Plaintiff (Compl. ¶¶ 70-73).

As such, all the elements of the claim are present in the Plaintiff's complaint, i.e., Plaintiff's suppliers and distributors constitute the first element of the claim or contractual relationship. The fact that the Defendants have made false representations to the Plaintiff's suppliers and distributors to discourage them from working with the Plaintiff indicates the Defendants' knowledge of such relationships and their intent to disrupt it, and thus harm the Plaintiff. The fact that the representations are false indicates the absence of privilege, and the fact that the Plaintiff was harmed by the Defendants' representations constitutes the required harm element. Accordingly, this claim is properly alleged.

*Declaratory Relief*

The Declaratory Judgment Act grants federal courts discretion to award declaratory relief in cases within their jurisdiction.[73]. Declaratory relief is appropriate where the judgment will "serve a useful purpose in clarifying and settling the legal relations in issue, and . . . will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."[74]. One purpose of a declaratory judgment is to relieve potential defendants from the threat of impending litigation.[75]

---

[73] 28 U.S.C. § 2201; *Public Affairs Press v. Rickover*, 369 U.S. 111, 112 (1962)

[74] *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (quoting *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984))

[75] *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990).

Under Ninth Circuit authority, a party seeking declaratory relief must satisfy the "case or controversy" requirement of 28 U.S.C. § 2201(a).[76] "To establish that a particular declaratory action presents an actual case or controversy, a party is required to show that, under all the circumstances of the case, there is a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief."[77]

In its MTD, apparently quoting Paul Bilzerian from his previous motion, Ignite argues:

> [D]eclaratory relief will not be helpful in this case as it is being sought merely to determine issues which are involved in a case already pending (i.e. the Canadian Proceedings) and can be properly disposed of therein (Mtn. p. 24).

As already stated above, none of the claims asserted in the Plaintiff's complaint have been raised, argued, or let alone adjudicated in the Canadian Proceedings, so Ignite's argument is nothing but misrepresentation.[78]

The only reason the Plaintiff asks for declaratory relief is because the Defendants, including Ignite, misrepresented to the Plaintiff's suppliers and distributors that Plaintiff is subject to a noncompete agreement preventing him from competing with Ignite's business.[79] None of these allegations were even mentioned in the Canadian Proceedings, and the reason the Plaintiff asserted this claim here is because the Defendants' conduct complained about is directly related to their activities of unlawfully using the Plaintiff's right of publicity to sell Defendants' goods, particularly because they not only want to use Dan's name to sell their

---

[76] *Hal Roach*, 896 F.2d at 1555.

[77] *Id.* (citing *Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981); *see also Market Lofts Cmty. Assn. v. 9th St. Market Lofts, LLC* 222 Cal. App. 4th 924, 932 (2014) ("[t]he law allows any party with an interest in a contract to pursue a declaration of rights as to that instrument when an actual controversy exists").

[78] It behooves one to remind this Court that after this action was filed, it was Ignite, presumably at Paul's direction, that attempted to forum shop and filed another action in Canada seeking to prevent the Plaintiff from competing with it, knowing full well that this issue has already been raised in this lawsuit (*See* ECF No. 29, pp. 68-82).

[79] ECF No. 1, ¶¶ 82-84.

goods, but they also want to wrongfully prevent Dan from benefiting from his own name and likeness.

*Copyrights Infringement*

While it is true that the registration of copyrights is a prerequisite to an infringement action under 17 U.S.C. § 411, there is no requirement that the registration certificates are specifically referenced in the complaint. In addition, the Plaintiff intends to amend his complaint to add a claim for common law copyright violations due to the fact that many of the Plaintiff's works unlawfully used by Paul and other Defendants were not registered with the USPTO.

At this juncture, Plaintiff's claims and allegations regarding Ignite and the other Defendants do not have to give rise to the most plausible explanation; they just have to give rise to one of them.[80] The Court must assume that Plaintiff's claims and allegations are true until Defendants can show they are false. This Court's position is simply to ensure that Plaintiff is not deprived of an opportunity to prove what he has alleged unless he would lose regardless.

## IV.   CONCLUSION

For the above reasons, Plaintiff respectfully requests that this Court deny Ignite's Motion to Dismiss.

DATED: May 12, 2025.

THE MEDRALA LAW FIRM, PLLC

*/s/ Jakub P. Medrala*

_____

JAKUB P. MEDRALA, ESQ.
Nevada Bar No. 12822
615 S. 6th Street
Las Vegas, Nevada 89101
*Attorney for Plaintiff*

---

[80] *Ashcroft*, 556 U.S. at 678 (stating that there is no "probability requirement" at the pleading stage (quoting *Bell Atl. Corp.*, 550 U.S. at 556, 127 S. Ct. at 1965)).