**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
**The Medrala Law Firm, Prof. LLC**
615 S. 6th Street
Las Vegas, Nevada 89101
(702) 475-8884
(702) 938-8625 Facsimile
jmedrala@medralaw.com
*Attorney for Plaintiff*
*DAN BILZERIAN*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAN BILZERIAN, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>IGNITE INTERNATIONAL BRANDS, LTD., a Foreign Corporation; IGNITE INTERNATIONAL, LTD., a Foreign Corporation; PAUL BILZERIAN, an Individual; SCOTT ROHLEDER, an Individual; RUPY DHADWAR, an Individual,<br><br>Defendants. | Case No. 2:24-cv-02101-RFB-NJK<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY** |

Plaintiff DAN BILZERIAN ("Mr. Bilzerian", "Plaintiff," or "Dan") hereby submits his Response in Opposition ("Opposition") to Defendant Ignite International Brands, Ltd.'s ("Ignite") Motion to Stay Discovery (ECF No. 53).

### MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Given the previous order staying discovery in this case against Ignite International, Ltd. and Scott Rohleder (ECF No. 52), the Plaintiff now stands in a difficult position to persuade this Court that the facts or the laws of his case against Ignite are different than the facts presented in his Response in Opposition to Defendants Ignite International Brands, Ltd.'s, and Scott Rohleder's Motion to Stay Discovery.

1

Nevertheless, the Plaintiff did realize that the defendants' attempts at dismissing this action AND staying discovery mainly focus on convincing the Court that this action should be dismissed based on the doctrine of *forum non-convenience* because, allegedly, there exists another dispute between the parties in Canada, the so-called "Canadian Proceedings," and for this reason this lawsuit warrants dismissal; more so than for lack of personal jurisdiction.[1] This argument, given proof of Ignite's extensive contacts with Nevada (ECF No. 59) is understandable from Ignite's strategic perspective; yet, it lacks legal merit.

What is troubling is that while advancing this argument, Ignite resorts to manipulation and out-right misrepresentations by stating that the "Canadian Proceedings" involve "the same subject matter as Plaintiff's claims in this action" (Mtn. p. 2), and that it is the Plaintiff who initiated the "Canadian Proceedings" – presumably involving the same subject matter. Id.

As it was already shown in the Plaintiff's Opposition to Ignite's Motion to Dismiss (ECF No. 59), this is simply not true.

Moreover, as it was recently explained by the Plaintiff in his Opposition to Ignite's Motion to Dismiss (ECF No. 59), the doctrine of forum *non-conveniens* is a drastic exercise of the court's power that cannot be exercised based on the sole premise that the parties are also involved in another dispute in Canada.

## II.    STATEMENT OF RELEVANT FACTS

*Dan Bilzerian and Ignite's Business*

Plaintiff is an internationally known poker player, businessman, and a social media influencer.[2] In 2017, he founded Ignite, a lifestyle brand selling disposable vapes, spirits, and

---

[1] Defendant Ignite's Motion to Stay Discovery is almost entirely based on the argument of *forum non-convenience*, and not the purported lack of personal jurisdiction.
[2] Complaint (ECF No. 1, ¶ 17).

2

apparel. While not directly involved in Ignite's operations, his name, likeness, and personality became the essence of Ignite, including all of the social media and other advertising and promotion.[3] Many of the pictures and videos used by Ignite and Ignite US in their marketing campaigns were taken in Las Vegas, Nevada, where Dan lives.[4] Ignite is a Canadian corporation selling electronic cigarettes, apparel, alcohol, water bottles, and other brand products.[5] Ignite International, Ltd. (Ignite US) is a Wyoming corporation, and it is a wholly owned subsidiary of Ignite. Ignite US, together with Ignite, market Ignite's products, and it is a licensor of Ignite's intellectual property rights.[6] Ignite and Ignite US utilize their distributor Summit Spirits and Wine, Inc. ("Summit Spirits"), a Nevada corporation located in Las Vegas, Nevada, to sell its products in Nevada.[7] Ignite also sells its alcohol products in Nevada through an extensive network of stores consisting of approximately 88 locations in Nevada, including a large chain, Lee's Discount Liquor.[8]

*Beginning of Dan's Dispute with Ignite*

Until December 2023, Dan served as the nominal CEO of Ignite. However, he was not directly involved in Ignite's operations and had a dispute with other Ignite shareholders—who later turned out to be Paul Bilzerian's – Dan's father's ("Paul") agents—over the course of Ignite's business, the quality of Ignite's products, and Ignite's leadership. In essence, Dan complained about the mismanagement of Ignite and Scott Rohleder ("Scott") and Paul's behind-the-scenes acts that caused harm to Ignite's business.[9] This led to his December 2023 removal from the

---

[3] *Id.* ¶ 18.
[4] *Id.* ¶ 13, Bilzerian Decl. ¶ 24.
[5] *Id.* ¶ 10, Bilzerian Decl. ¶ 8.
[6] *Id.* ¶ 11.
[7] Duque Dec., ¶¶ 10 and 12; Bilzerian Decl. ¶ 18.
[8] Bilzerian Decl. ¶ 16.
[9] *Id.* ¶ 18.

3

position of Ignite's CEO, after which Dan revoked Ignite's right to use his name and likeness, or image.[10] On June 2, 2024, Paul; and Rohleder also removed Dan from the position of chairman of the board and unilaterally and unlawfully seized control of Ignite's operations.[11]

*Ignite's Unlawful Use of Plaintiff's Name and Likeness*

Despite Dan's unlawful removal from Ignite, the Defendants continue to use Dan's name, image, and likeness, as well as copyrighted photographs, without his permission and without providing him with any compensation.[12]

*Canadian Proceedings*

As a result of Plaintiff's unlawful removal from Ignite, and because Ignite is a Canadian corporation, Plaintiff filed in Canada two petitions concerning Ignite's corporate governance – not Ignite's misappropriation of Plaintiff's likeness.

Similarly to all the other Defendants who appeared in this action, however, Ignite attempts to mislead this Court and argue that "Plaintiff's claims in the Canadian Proceedings arise from the same transactions and occurrences as the instant action" (Mtn, p. 2). **They do not**, and to clearly see this, it is important to summarize the various lawsuits that were commenced by the Plaintiff in Canada before the filing of this action and a different lawsuit commenced by Ignite against the Plaintiff AFTER the filing of the present action:

*Plaintiff's Initiated Proceedings in Canada Filed Before the Commencement of the Present Lawsuit*

1. On July 8, 2024 (Ex. 1) (amended as of July 11, 2024, Ex. 2), the Plaintiff on behalf of Ignite, filed a petition with the Supreme Court of British Columbia, Case No. S244508, seeking

---

[10] *Id.* ¶ 22, Bilzerian Decl. ¶ 12
[11] *Id.* ¶ 23.
[12] ECF No. 1, ¶ 24.

to restrain certain individuals (including Scott Rohleder) from holding themselves out as Ignite's directors and officers and from restraining those individuals from undermining the Plaintiff as Ignite's sole officer and director (Ex. 1, pp. 3-4). This petition was defective and has been withdrawn by the Plaintiff. None of the claims raised in these proceedings were raised by the Plaintiff in the present action.

2. On August 19, 2024 (Ex. 3)(amended as of September 16, 2024, Ex. 4), the Plaintiff, this time on his own behalf, filed a petition with the Supreme Court of British Columbia, Case No. 245663, seeking virtually the same relief as the July 8, 2024, petition (Ex. 1, pp. 1-2), but he is seeking it on his own behalf, and not on behalf of Ignite. The Plaintiff has since withdrawn his demand that he be reinstated as an officer or director of Ignite. These proceedings also involve Ignite's erroneously granted request to seize Mr. Bilzerian's social media account (ECF No. 46-7). This request, however, was granted to Ignite based on the fact that the Plaintiff is no longer an officer of Ignite, not because misappropriation of Plaintiff's likeness was litigated there.

None of the proceedings initiated by the Plaintiff in Canada raise claims that were raised by the Plaintiff in the present action i.e. misappropriation of likeness, trademark infringement, interference with Plaintiff's business relationships, copyrights infringement, etc.

*Defendant's Proceeding in Canada Filed **After** the Commencement of the Present Lawsuit*

1. On February 14, 2025, long after the Plaintiff filed the present lawsuit on November 12, 2024, Ignite filed a Notice of Civil Claim in the Supreme Court of British Columbia, Case No. 251196, seeking a declaration from this court that the Plaintiff cannot compete with Ignite (Ex. 5, p. 12).

Coincidently, Ignite's proceedings under Case No. 251196, filed on February 14, 2025, are the specific and only "Canadian Proceedings" that "arise from the same transactions and occurrences in the instant action" (Mtn, p. 2). This is specifically so because in the present lawsuit filed on November 12, 2024, the Plaintiff raised the issue of the Defendants interfering with the Plaintiff's new business ventures and asked for declaratory relief stating that he is not prevented from conducting any business activities that compete with Ignite's business (ECF No. 1, ¶¶ 74-84). In response, Ignite filed a competing lawsuit in Canada in a blatant attempt to forum shop and to preempt the jurisdiction of this court.[13]

In other words, Ignite now seeks a dismissal of this *earlier-filed* action (this lawsuit) based on the fact that it *later filed* a different action in Canada stemming "from the same transactions and occurrences in the instant action" (Mtn, p. 2). Moreover, by lumping its own action together with the Plaintiff's actions concerning Ignite's corporate governance and not explaining to the Court their allegations, Ignite attempts to mislead this Court to believe that its action under the Canadian Case No. 251196, filed on February 14, 2025, was actually initiated by the Plaintiff and that it involves the same issues that are raised in this action (Mtn. 2).

### III.   ARGUMENT

The Defendant alleges that to stay discovery, a party must show that "(1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a 'preliminary peek' at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim

---

[13] As a matter of fact, the Plaintiff challenged "Ignite's Canadian Proceedings" based on lack of personal jurisdiction AND the doctrine of *forum non-convenience* specifically because of the pendency of the present lawsuit (Ex. 6, par. 11).

6

for relief."[14] While there is some authority to support this approach, and it has been referred to as traditional, it has been criticized, and some courts in this jurisdiction have adopted a more pragmatic approach to the determination.[15] Under the pragmatic approach, courts usually look at "(1) if the dispositive motion can be decided without further discovery; and (2) good cause exists to stay discovery." *Id.*;[16]. Regardless of the approach this Court chooses to apply, Plaintiff respectfully suggests that under these circumstances, it is appropriate to allow discovery to proceed, especially in light of Defendant's denial of its contacts with Nevada. Defendant has not and cannot satisfy the third portion of the traditional test and have not and cannot satisfy the second portion of the pragmatic test. Perhaps more importantly, issuing the stay would prejudice the Plaintiff by delaying justice while his name and likeness continue to be used in ways that will harm him.

    **a. Under the traditional test as laid out in *Kor*, the Defendant cannot satisfy the third factor since this Court has jurisdiction**

Under the "preliminary peek" or traditional test, a party seeking a stay of discovery must show, among other things, that the potentially dispositive motion will be granted.[17] This has consistently been described as a heavy burden for the party seeking to stay discovery in this district. *Id.*[18]

///

///

---

[14] *Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013)
[15] *CC.Mexicano.US, LLC v. Aero II Aviation, Inc.*, No. 2:14-CV-00108-JCM-NJK, 2014 WL 12707483, at *1 (D. Nev. July 18, 2014)
[16] *Schrader v. Wynn Las Vegas, LLC*, No. 2:19-cv-02159-JCM-BNW, 2021 U.S. Dist. LEXIS 198974, at *10-11 (D. Nev. Oct. 14, 2021)
[17] *Kor*, 294 F.R.D. at 581
[18] *CC.Mexicano. US, LLC v. Aero II Aviation, Inc.*, No. 2:14-CV-00108-JCM-NJK, 2014 WL 12707483, at *1 (D. Nev. July 18, 2014).

*Personal Jurisdiction*

The Defendant contends that this standard is lowered to a more lenient approach when there is a question over personal jurisdiction (ECF 28 No., p. 7). While a slightly more lenient approach may be used when the dispositive motion is based on a claim of lack of jurisdiction, the courts retain discretion to deny a request for stay even under those circumstances.[19]

Here, even if this Court applies a lenient standard, the Defendant cannot show that it is a likely to prevail on its motion to dismiss for lack of personal jurisdiction (*See generally* ECF No. 59). There is abundant evidence that Ignite has substantial, continuous, and systematic connections with Nevada, including selling its products through a network of over 88 locations in Nevada and targeting advertisements of these products to Nevada (ECF No. 59; Duque Dec., ¶¶10-14, Bilzerian Decl. ¶¶13-24). Moreover, many of these activities in Nevada are at the heart of or directly related to the causes of action raised in the complaint, including misappropriation of likeness and copyright infringement (ECF No. 1; ECF No. 59).

In fact, despite arguing extensively that a more lenient standard should be used because a challenge for personal jurisdiction was raised, the Defendant gives it short stroke in its argument. Instead, it focuses on claims that other venues may be more appropriate or that *forum non conveniens* applies, claims that center primarily on completely false allegations that these matters are already being adjudicated in a Canadian court.

*Forum non-convenience*

However, these matters are not being litigated in Canada. Moreover, "The principle of *forum non-convenience* is simply that a court may resist imposition upon its jurisdiction even

---

[19] *See, e.g., Playup, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1099 (D. Nev. 2022); *Bliss v. CoreCivic, Inc.*, No. 2:18-cv-01280-JAD-GWF, 2018 U.S. Dist. LEXIS 231032, at *7 (D. Nev. Nov. 21, 2018).

when jurisdiction is authorized by the letter of the general venue statute."[20] The doctrine is an unusual departure from the normal rules and thus requires that the defendants prove the existence of "**exceptional circumstances**" warranting its application.[21] The doctrine is said to be "an exceptional tool to be used sparingly" rather than a "doctrine that compels plaintiffs to choose the optimal forum for their claim."[22]

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal."[23]

As more fully explained in the Plaintiff's Response to Ignite's Motion to Dismiss (ECF No. 59, pp. 15-17), Ignite simply cannot meet the high standard for dismissal under the doctrine.

Moreover, except for Ignite's February 2025 lawsuit, the proceedings in Canada focus on Ignite's corporate governance (*See, e.g.*, ECF No. 1, p. 4; Exs. 1-4). On the other hand, the instant case centers on events that occurred **after** Plaintiff was removed as CEO of Ignite Brands and that are ongoing. *Id.* In particular, this case centers primarily on Defendants' intentional and unlawful usage of Plaintiff's name, likeness, and general reputation after he was forcibly removed from Ignite (ECF No. 1). None of the causes of action raised in this Complaint were raised in the Canadian proceedings, nor could they have properly been raised in those proceedings as they pertain to matters primarily occurring in the United States, and Nevada specifically.

Moreover, case law from federal courts does not support the Defendant's position supporting dismissal on *forum non-convenience* grounds.

---

[20] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).
[21] *Magellan Real Est., Inc. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1148 (D. Ariz. 2000).
[22] *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).
[23] *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 915 (2016).

9

In its Motion, Ignite cites *Sinochem Int'l Co.v. Malaysia Int'l Shipping Corp.*,[24] for the proposition that proceedings pending in another jurisdiction constitute grounds for dismissal based on *forum non-convenience* doctrine. *Sinochem Int'l Co.* does not stand for this proposition.

In that case a Malaysian shipping company brought action in Pennsylvania against a Chinese importer alleging fraudulent misrepresentation in connection with shipment of steel coils that were to be loaded in Pennsylvanian. *Id.* A dispute arose between the two parties and the Chinese company brought an action in China for preservation on its claim against the Malaysian company. *Id*. Thereafter, the Malaysian company brought an action in the U.S. District Court alleging that the Chinese company made certain misrepresentations to the Chinese admiralty court. *Id.* The action was dismissed based on the *forum non-convenience* doctrine, due to the fact that the Court found that a dispute between two foreign companies over misrepresentations made to a Chinese court "is an issue best left for determination by the Chinese courts."[25]

The present case, however, involves a completely different factual basis. In this case, we have a Plaintiff, a Nevada resident, complaining about the defendants' acts that take place in the U.S. in general, and Nevada specifically (ECF No.1). In addition, although the parties are involved in a completely different dispute in Canada over corporate governance of Ignite, none of the claims raised in this action concern determination of facts that take place in Canada (Exs. 1-5).

Moreover, any plaintiff's selection of a forum is entitled to deference; however, that deference increases as the plaintiff's ties to the forum increase. *See, e.g., Murray v. British Broad. Corp.,* 81 F.3d 287, 290 (2d Cir.1996) (holding that a domestic plaintiff's choice of forum is

---

[24] 549 U.S. 422, 425, (2007)
[25] Id. at 424.

entitled to more deference than a foreign plaintiff's); *see also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 n. 23, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (noting that the choice of a forum by its citizens and residents is entitled to greater deference than a stranger's choice); *Koster v. American Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947). ("[A] real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.").

Finally, as a matter of policy, a Plaintiff has both a right and a duty to proceed expeditiously unless that is in some way superseded by other concerns. *See* FRCP 1 (noting the importance of "speedy" determination of every action and proceeding). This policy weighs in favor of not staying discovery and allowing it to proceed. Plaintiff anticipates that this Court will deny the Motion to Dismiss for the reasons stated above and stated in more detail in the oppositions to the pending motions. But even if, purely arguendo, this Court were to require that the proceedings be held in Canada, these matters do need to be adjudicated and are not presently pending before a Canadian court. Staying discovery would therefore merely cause delays with no real benefit and run contrary to the goals of providing a just and speedy determination.

**b. Under the pragmatic approach as laid out in *Schrader*, there is no good cause to stay discovery**

If this Court uses the pragmatic approach, then the Plaintiff respectfully suggests that the second requirement that there be good cause for staying discovery will fail here.[26] Policy supports permitting discovery to proceed.

Ignite never directly attempts to show a good cause, and no such cause exists. The Defendant will likely suggest either that the three prongs of the traditional approach when taken

---

[26] *Schrader v. Wynn Las Vegas, LLC*, No. 2:19-cv-02159-JCM-BNW, 2021 U.S. Dist. LEXIS 198974, at *10-11 (D. Nev. Oct. 14, 2021)

11

together inherently show good cause or that they did not need to show good cause under that approach. However, either of those would fail. Even the authority relied upon by the Defendant for the traditional approach discusses good cause and merely states that the three factors of the traditional approach are relevant (ECF p. 6, ll. 16-20); *see also Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011) (discussing the importance of good cause).

However, if the Defendant had attempted to show good cause or attempt to do so in a reply, they could not do so. The Rules of Civil Procedure heavily favor speedy and expeditious resolutions of matters. Staying discovery will unnecessarily delay the resolution of this case. The Defendant may claim that it would save the expense of discovery, but that is only relevant if the expense of discovery is only likely to be undue or would create waste.[27] But here, as discussed above, the Plaintiff respectfully suggests that this Court is the appropriate venue and that discovery will lead directly to information that will be presented before this Court. Even if, hypothetically, this Court ultimately finds that the matters should be adjudicated elsewhere, they must be adjudicated. Time spent on discovery in this case will not be wasted.

Moreover, staying discovery will cause prejudice to the Plaintiff. In addition to the usual fact that the Plaintiff is entitled to a speedy determination of the causes of action, here, the causes of action center on improper usage of the Plaintiff's name, likeness, and general reputation. Delays in adjudication cause delays in the Plaintiff receiving relief for and from these improper usages that affect him on a direct and personal basis. Accordingly, policy favors denying the stay.

### IV.  CONCLUSION

Plaintiff respectfully requests that this Motion be denied in its entirety. Ignite cannot make the necessary showing to support a stay of discovery. Further, the Plaintiff would be harmed by

---

[27] *Id.*

delays in adjudication of these matters that center on the usage of his personality, including his name and likeness.

DATED this 13th day of March, 2025.

THE MEDRALA LAW FIRM, PLLC

/s/ Jakub P. Medrala

_____
**JAKUB P. MEDRALA, ESQ.**
Nevada Bar No. 12822
615 S. 6th Street
Las Vegas, Nevada 89101
*Attorney for DAN BILZERIAN*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, the above document was submitted to the electronic service system, which sent notification of such filings(s) to the defendants, which are registered for electronic service.

Respectfully submitted: May 13, 2025.

THE MEDRALA LAW FIRM, PLLC

/s/ Jakub P. Medrala
Jakub P. Medrala
Attorney for Plaintiff